IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMUNITY HOUSING IMPROVEMENT PROGRAM, RENT STABILIZATION ASSOCIATION OF N.Y.C., INC., CONSTANCE NUGENT-MILLER, MYCAK LLC, VERMYCK LLC, M&T MYCAK LLC, CINDY REALTY LLC, DANIELLE REALTY LLC, FOREST REALTY, LLC,<br><br>             Plaintiffs,<br><br>   v.<br><br>CITY OF NEW YORK, RENT GUIDELINES BOARD, DAVID REISS, CECILIA JOZA, ALEX SCHWARZ, GERMAN TEJEDA, MAY YU, PATTI STONE, J. SCOTT WALSH, LEAH GOODRIDGE AND SHEILA GARCIA, IN THEIR OFFICIAL CAPACITIES AS CHAIR AND MEMBERS, RESPECTIVELY, OF THE RENT GUIDELINES BOARD, AND RUTHANNE VISNAUSKAS, IN HER OFFICIAL CAPACITY AS COMMISSIONER OF NEW YORK STATE HOMES AND COMMUNITY RENEWAL, DIVISION OF HOUSING AND COMMUNITY RENEWAL,<br><br>             Defendants. | Case No. _____<br><br>**DECLARATION OF JOSEPH STRASBURG ON BEHALF OF THE RENT STABILIZATION ASSOCIATION** |

**DECLARATION OF JOSEPH STRASBURG**

I, Joseph Strasburg, declare based upon personal knowledge that:

1. I am over eighteen years of age and suffer from no disability that would preclude me from giving this declaration.

2. I am the President of the Rent Stabilization Association of New York City, Inc. ("RSA").

3. The RSA is an organization comprised of approximately 25,000 owners and managing agents of apartment buildings in New York City. RSA members own or manage approximately one million apartments in New York City. RSA members range from so-called "Mom-and-Pop" operators who own a single, small building, to large-scale operators who own or manage hundreds, if not thousands, of apartments throughout the City.

4. Each member of RSA owns, manages or otherwise has some interest in real property in New York City.

5. RSA has three fundamental purposes. First, RSA advocates on behalf of its members at the New York City Council, the New York State Legislature, and City and State agencies, on an array of housing policy issues, including the issue of rent regulation. Second, RSA fills an informational and educational role, providing updates in the form of a monthly newsletter, seminars, and e-mails to its members relating to the requirements of State and City laws and regulations that impact upon the ownership and management of apartment buildings in the City. Third, in addition to a staff of customer service agents, RSA provides compliance services to its members—and sometimes non-members—to assist those individuals in their efforts to comply with various statutory and regulatory requirements, including but not limited to, annual rent registrations with the State Division of Housing and Community Renewal and annual safety notices to comply with City requirements relating to window guards, fire safety and lead paint.

6. RSA members own and/or manage apartment buildings with apartments that are subject to New York's Rent Stabilization Law (the "RSL").

7. As a result of the RSL and the State laws it implements, RSA's members are compelled to employ staff and expend resources to understand and to actually comply with the

requirements of the RSL. Those harms are in addition to, and separate and apart from, the economic injuries incurred by RSA's members as a direct result of the regulation of rents and all forms of allowable rent increases. RSA's members are also subject to an assortment of administrative and judicial proceedings which can lead to determinations of rent overcharges (including treble damages), and other adverse financial consequences.

8. The rights of RSA members to use, develop and enjoy their property are substantially impaired by the RSL.

9. RSA members have suffered a diminution of the value of, and income derivable from, their property as a direct result of the RSL.

10. RSA has had discussions with members injured by the RSL who are unwilling or feel unable to join this lawsuit as named plaintiffs, or to themselves bring suit to challenge the constitutionality of the RSL, for fear of reprisal by the City and State in the form of enhanced regulatory scrutiny or other harassment that may accompany taking a public position against the RSL.

11. As a result of the RSL, RSA itself employs staff and other association funds and resources to maximize its ability to educate and provide the wide range of information necessary for its members to remain in compliance with the RSL's regulatory requirements.

12. RSA has participated as a party or as *amicus curiae* in a significant number of State and federal court proceedings on behalf of its members relating to matters within the purview of the RSL.

13. In addition, RSA has undertaken costly and time-consuming efforts in advocating on behalf of its members at the City and State levels against RSL regulations. Specifically, RSA, as it has in years past, prepared and submitted testimony in March 2018 at the New York City

Council triennial hearing to whether a housing "emergency" exists, as a basis to continue RSL regulations. RSA also actively advocated in New York City and in Albany against the 2019 amendments to the RSL passed by the New York State legislature. Its representatives met with State Senators and Members of the Assembly, testified at an Assembly Committee on Housing. RSA also commissioned reports on the economic impact of the 2019 amendments and engaged in extensive media efforts.

14. In addition, each and every year RSA undertakes a thoroughly researched and extensive submission to the Rent Guidelines Board analyzing relevant economic data in an effort to provide the RGB with the industry's perspective and requisite justifications for rent increases for renewal leases.

15. As the result of the RSL, RSA provides to its members- as well as non-members- a fee-based service relating to the RSL's requirement that the rents charged to rent-stabilized tenants be registered with the State Division of Housing and Community Renewal.

16. The time, money and other resources expended by RSA in addressing the RSL diverts those resources from other programs and services that are central to RSA's mission. In addition to the RSL, our members are subject to countless other statutory and regulatory requirements pursuant to State and local law under the purview of the City's Department of Housing Preservation and Development, the Department of Buildings, the Department of Health and Mental Hygiene, the Department of Sanitation, the Department of Finance, the Department of Environmental Protection, the Fire Department, and various other State and City agencies.

17. The RSL makes it more difficult for RSA to advance the interests of its members. As described in the foregoing paragraph, by virtue of the time, effort and resources required

by the sheer number of complex issues relating to compliance with the RSL, RSA is less able to ensure that its members are able to obtain the information necessary to comply with all of the other regulatory requirements to which they are subject pursuant to other State and local laws.

18. In short, the amount of time, money, and effort expended by RSA directly related to, and as a result of, the RSL and the State laws that it implements is substantial. These expenditures go far beyond those that would be required to carry out RSA's above-described mission, in the absence of the RSL.

19. A judgment enjoining the RSL or parts of the RSL as a violation of the Due Process Clause, or declaring it to take private property without providing just compensation, would eliminate or reduce the need for RSA to offer programs and services directed to its members' RSL compliance.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 7/11/2019

Joseph Strasburg
President
Rent Stabilization Association of New York City, Inc.