ORIGINAL

Towaki Komatsu
802 Fairmount Pl. Apt. 4B
Bronx, NY 10460
Tel: 718-450-6951
E-mail: Towaki_Komatsu@yahoo.com

September 11, 2019

Hon. Margo Brodi
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201



Re: <u>Community Housing Improvement Program v. City of New York</u>, No. 19-cv-4087 (MKB)(RML) (E.D.N.Y.)

Dear Judge Brodi,

My name is Towaki Komatsu. I'm filing this letter pursuant to FRCP Rule 24 that concerns intervention both as of right and by permission in order to be granted the ability to intervene in this action as an interested party. Under Rule 24(a)(2), a district court must grant an applicant's motion to intervene if "(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by other parties." Rule 24(b)(1) addresses permissive intervention and states, "the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24. "When considering a request for permissive intervention, a district court must 'consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

The case in which I seek to intervene concerns the following property and transactions in which I claim an interest:

1. Real property to the extent that it concerns being deprived of property without due process of law.

2. Transactions that have established new rent laws in New York State that are being challenged in this action on constitutional grounds after the United States Supreme Court issued a landmark decision concerning due process in in *Goldberg v. Kelly*, 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970). The following are several pertinent excerpts from Goldberg that identify the legal standards it established for constitutional due process rights:

    a. "The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U. S. 385, 394 (1914). The hearing must be "at a meaningful time and in a meaningful manner."

    b. "The opportunity to be heard must be tailored to the *269 capacities and circumstances of those who are to be heard."

My interest in the transactions that are the subject of this action is due to the following facts:

1. I have repeatedly been deprived of possession of apartments for which I signed fully-enforceable apartment lease agreements under the color of law without having been granted due process of law.

2. The City of New York through its New York City Human Resources Administration ("HRA") unlawfully deprived me of possession of one of those apartments as a result of HRA having illegally changed material terms on or prior to 2/18/16 with neither my consent nor prior knowledge within a binding and fully-enforceable apartment lease agreement that I signed on 2/16/16. The information shown within the following screenshot that appears on page 40 within a report that is known as an "evidence packet" that I received on 2/8/17 from

HRA in response to valid litigation that I commenced against it substantiates this assertion that corresponds to a patently illegal bait-and-switch fraud and forgery that HRA's personnel committed against me in regards to a binding and fully-enforceable apartment lease agreement that I signed on 2/16/16 in HRA's offices with its business partner Urban Pathways, Inc. ("Urban"):

| 2/18/2016 | Error Correction | Benjamin-Solis,K | Correction to Aprtment number |

3. The State of New York is proximately responsible pursuant to the legal doctrine of Respondeat Superior for having unlawfully deprived me of possession of one of my former apartments that was located in Queens as a consequence of its status as the employer of New York City Housing Court Judge Clifton Nembhard and the State of New York's grossly inadequate training and supervision of him to sufficiently prevent him from engaging in judicial misconduct. On 7/10/15, Judge Nembhard fraudulently conducted an inspection inside of an apartment that I was then renting in Queens. While doing so, he illegally condoned the fact that two court officers illegally coerced me to shut off an audio recording device that I was using in my own apartment instead of a courthouse to gather material evidence that would benefit me in the event that I sought to subsequently appeal any adverse decision that Judge Nembhard thereafter issued in a housing court case to which he was then assigned in which I was a party. I still have the audio recording of his visit to my apartment as well as a transcript that was created from it before I was illegally coerced to shut off that audio recording device. What follows is a screenshot from page 16 in that transcript and reflects remarks that Judge Nembhard stated to me in that apartment as I lawfully expressed entirely valid objections to him and two court officers who accompanied him there about how they were fraudulently conducting an inspection in my apartment. His remarks in that

screenshot clearly establish that he exhibited hostility and bias toward me while he was in that apartment. On 3/1/16, that transcript was among 5 or 6 that I handed to HRA Commissioner Steven Banks while meeting him for the first time at the Yale Club in Manhattan that is located near Grand Central Station. Back then, I handed him those transcripts while talking with him to try to get assistance from HRA with being provided pro bono legal representation to overcome the irreparable harm that Judge Nembhard caused me by judicial misconduct. I didn't know then that Mr. Banks' wife is the Supervising Judge Citywide for New York City's Housing Courts. However, I have since known that Jean Schneider was precisely that while I talked to Mr. Banks on 3/1/16. That fact confirms that Mr. Banks had a clear conflict of interest then due to his wife's inexcusable failure to adequately supervise Judge Nembhard.

> THE COURT    :    Why am I here today? I'm not here to hear you speak today, sir. (1:48:28) I'm sorry that if you're under the impression that I came here to listen to your arguments today, you're sorely, sadly mistaken. (1:48:29) I came here--
> MR. KOMATSU    :    I'm not saying that at all.
> THE COURT    :    (INAUDIBLE) Were you under the impression that I came here to listen to oral arguments from you today?
> MR. KOMATSU    :    No (INAUDIBLE)
> THE COURT    :    Then stop. Stop.
> MR. KOMATSU    :    All I'm saying-- (INAUDIBLE) I was going to be bossed around in my own apartment.

After Judge Nembhard left my apartment, he issued a decision on 8/14/15 in a housing court case in which I was a party. The following screenshot appears in the footnote section of page 2 within that decision.

> [2]The Court denied petitioner's attempt to introduce these recordings into evidence based on his acknowledgment that they were the same sounds heard by the Court during the inspection.

The plain text shown in the screenshot above confirms that Judge Nembhard illegally prevented me from being able to present material and admissible evidence that consisted of audio and video electronic recordings that I legally recorded in my apartment while he was present in it on 7/10/15. He also fraudulently claimed in the remarks that appear in that screenshot that I acknowledged that sounds that would be heard in the recordings that I sought to present as evidence were the same sounds that he heard in my apartment on 7/10/15. Contrary to Judge Nembhard's lies, that fact that recordings that I sought to present as material evidence in that case were recorded on different dates and times in my apartment he briefly visited on just one date is among other facts that confirm that the noises that I recorded in that apartment that corresponded to housing defects in need of repairs were materially different from sounds that he may have heard while he was inside of my apartment on 7/10/15.

After Judge Nembhard issued an illegal decision in October of 2015 in a housing court case in which I was a party that illegally caused me to be deprived of possession of my apartment in Queens shortly thereafter, Judge Nembhard was a member of a commission that was established by New York State Chief Judge Janet DiFiore that was assigned the responsibility to develop recommendations about how to reform New York City's housing courts. The name of that commission was "Special Commission on the Future of the New

York City Housing Court. What follows is a link to a report that is available on the Internet that commission issued in January of 2018 to Chief Judge DiFiore. Page 32 within that report confirms that Judge Nembhard was a member of that commission.

Link to the report: http://www.nycourts.gov/publications/housingreport2018.pdf

I am so situated that without intervention, disposition of this action may, as a practical matter, impair or impede my ability to protect my interests. This is true partly for the following reasons:

1. The new rent laws that New York State enacted and are the subject of this action will continue to be discriminatory with respect to tenants who have been contending with legal disputes against landlords that predate the effective date of the new New York State rent laws. In this respect, those new laws flagrantly violate the U.S. Constitution's Fourteenth Amendment equal protection provisions that pertain to similarly-circumstanced people. This fact confirms that those new rent laws violate fundamental constitutional due process rights.

2. It is entirely clear that the plaintiffs and defendants in this action as well as others who have submitted requests to intervene in it and the attorneys representing all of the groups to which I just referred do not represent my interests at all or sufficiently in this matter.

3. Although I have been entirely truthful while having repeatedly testified to and otherwise had communications with New York City Mayor Bill de Blasio ("the Mayor"), members of the New York City Council, HRA Commissioner Steven Banks, and whistleblower news censors in journalism that include Greg Smith (he used to work for the New York Daily News), Yoav Gonen (he used to work for the New York Post), J. David Goodman (he works for the New York Times) about housing matters and my need for legal assistance to address them, they have opted to wrongfully censor and shun me instead of assist me. One of the ways in which that has occurred has been the result of members of the Mayor's NYPD security detail and

his staff having illegally prevented me from attending public forums comprised of public town hall meetings, public resource fair meetings, and public hearings that the Mayor conducted between April of 2017 and March of 2019 in violation of my rights pursuant to the First Amendment, Fourteenth Amendment, and New York State's Open Meetings Law that was in retaliation for entirely valid active litigation against HRA that I commenced in January of 2017, is filed with the New York State Supreme Court in Manhattan, and is assigned the index number of 100054/2017. Due to the illegal acts that were committed against me at such public forums for the benefit of the Mayor, HRA's Commissioner, and members of the New York City Council, I also have an active federal lawsuit against the City of New York that corresponds to *Komatsu v. City of New York*, No. 18-cv-3698 (LGS)(GWG)(S.D.N.Y.). My claims in that lawsuit are inextricably intertwined with my claims in my parallel lawsuit against HRA that is filed with the New York State Supreme Court in Manhattan. For that reason and in the interests of judicial economy, I have been attempting to consolidate those lawsuits pursuant to FRCP Rule 42 and 28 U.S.C. §1367 in a manner that will have my federal lawsuit incorporate the entirety of my claims between those two lawsuits. On 8/22/19, United States District Judge Lorna Schofield issued an order in my federal lawsuit that finally authorized me to file a further amended complaint in it that will enable me to vastly expand its scope in terms of both the claims that it will encompass and the defendants who will be in it.

4. On or about 5/11/16, HRA Commissioner Steven Banks told me that he didn't know if anything could be done about what he described as "past cases". When he made a remark to that effect to me back then, he was referring to housing court cases in which tenants had been a party in New York City prior to New York City's government having implemented reforms

to provide many more tenants pro bono or low-cost legal representation or legal assistance for housing court cases. That conversation between us occurred during a meeting that was held at New York University.

5. On 8/11/17, I attended a meeting that the Mayor, Mr. Banks, New York City Councilman Mark Levine, New York City Councilwoman Vanessa Gibson, and New York State Attorney General Letitia James conducted with other government officials in the Bronx. That meeting was also about reforms that New York City's government was implementing to benefit tenants who could possibly face litigation in New York City's housing courts thereafter or were currently contending with such litigation. At the end of that meeting, I briefly talked with both Mr. Levine and Ms. Gibson about needs that I continued to have for pro bono legal representation to contend with housing matters for what Mr. Banks previously characterized as "past cases". When I talked then with Mr. Levine about that matter and asked him why he hadn't considered including provisions that would be retroactive and retrospective in nature within legislation that he worked on that pertained to strengthening protections for tenants, he told me that he hadn't thought about that while he worked on that legislation. When I talked then with Ms. Gibson about why New York City's government was using HRA to provide funding to legal organizations that include the Legal Aid Society to provide legal representation and/or legal assistance to tenants for housing court matters while Mr. Banks had a clear conflict of interest due to his wife's status as the Supervising Judge Citywide for New York City's Housing Courts, she told me that it was due to how the contracts were established for having that funding made available to those legal organizations.

In the event that this Court needs clarification about anything that I have discussed in this letter, I respectfully request a conference with this Court for that purpose.

Thank you for your time and consideration.

Regards,

Towaki Komatsu