**MAYER | BROWN**

Mayer Brown LLP
1999 K Street, N.W.
Washington, DC 20006-1101
United States of America

T: +1 202 263 3000
F: +1 202 263 3300
mayerbrown.com

**Andrew J. Pincus**
Partner
T: +1 202 263 3220
F: +1 202 263 5220
apincus@mayerbrown.com

**BY ECF**

September 16, 2019

Honorable Margo K. Brodie
United States Courthouse
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:  *CHIP, RSA, et al. v. City of New York, et al.*, Docket No. 19-cv-04087:
     Response to September 6, 2019 Pre-Motion Letters

Dear Judge Brodie:

We write on behalf of Plaintiffs in response to the pre-motion letters submitted by the City Defendants and Commissioner Visnauskas. We also respond to the September 6, 2019 pre-motion letter submitted by N.Y. Tenants and Neighbors and Community Voices Heard (collectively "Putative Intervenors"). First, as explained below, Plaintiffs have stated claims for relief and will oppose Defendants' motions to dismiss. Plaintiffs do not oppose a pre-motion conference on the proposed motions to dismiss, but if the only reason for such a conference is to set a motion schedule, Plaintiffs expect that, pursuant to our communications with Counsel for Defendants, the parties will be able to work together to set a proposed schedule for the Court's consideration.[1] Second, Plaintiffs do not oppose Putative Intervenors' motion to intervene permissively, so long as their briefing schedule is coordinated with Defendants.

**Defendants' Proposed Motions to Dismiss.** Defendants and Putative Intervenors identify no legitimate basis for dismissing Plaintiffs' claims. Rather, they cite physical takings decisions resting on legal principles since repudiated by the Supreme Court and which, in any case, did not assess the current RSL. They invent strawman regulatory takings legal theories that are disconnected from Plaintiffs' allegations, they argue that the RSL is rationally related to achieving goals that the RSL has failed to effectively address in 50 years, and they contend the Plaintiffs' challenge is untimely even though the New York legislature just recently renewed the RSL, and the law dramatically limits Plaintiffs' property rights due to annual and triennial actions of the Rent Guidelines Board and the New York City Council. As will be explained in more detail in our responsive briefing, their arguments all fail.

*First,* Plaintiffs have stated a claim that the RSL, on its face, works a physical taking of Plaintiffs' property in violation of the Fifth Amendment to the U.S. Constitution. Plaintiffs have plausibly alleged that, pursuant to the RSL, (i) property owners across the city are forced to endure the physical occupation of their properties by tenants of indefinite duration, many of

---

[1] Plaintiffs contacted counsel for both the City Defendants and Commissioner Visnauskas in an attempt to agree on a briefing schedule in advance of the Defendants' letter filings. The City Defendants were amendable to discussing such a schedule in advance of submitting its letter, but Commissioner Visnauskas' counsel stated their preference was to defer such a schedule until the issue of a hearing was determined. Nonetheless, both Defendants' counsel indicated a willingness to work out such a schedule in the event a conference was not otherwise necessary.

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian partnership).

Honorable Margo K. Brodie
September 16, 2019
Page 2

whom are strangers to the owner; (ii) owners may not occupy or use their own property absent a showing of compelling need, and then are denied use of more than a single unit in their own building; (iii) owners cannot withdraw their properties from the rental market except in very limited circumstances; and (iv) owners cannot convert buildings containing stabilized units into condominiums or cooperatives without the consent of a majority of in-place tenants—even if those tenants' units would remain stabilized post-conversion. By depriving owners of their right to exclude others, their right to possess or use their own property, and their ability to dispose of that property, the RSL has stripped owners of essential elements of their ownership rights.

Defendants' reliance on older precedent, including *Harmon v. Markus*, 412 F. App's 420 (2d Cir. 2011), and *Fed. Home Loan Mortg. Corp. v. N.Y. State Div. of Hous. & Cmty. Renewal,* 83 F.3d 45, 47 (2d Cir 1996), fails to recognize the impact of more recent Supreme Court decisions, or to account for the substantial rights the RSL has stripped from owners over the past decade, including through the 2019 Amendment (termed "the strongest tenant protections in history"). Compl. ¶ 65; *see also id*. at ¶¶ 194-201. Defendants also argue that owners have forfeited their takings claims because they "have chosen to engage in the business of renting to tenants" (City Defendants' Letter at 2). That theory was rejected in *Horne v. Dep't of Ag.,* 135 S.Ct. 2419, 2430 (2015). Conceding that Plaintiffs' properties "[do] not come with the full bundle of traditional property rights," (Visnauskas Letter at 2), Defendants contend that Plaintiffs acquiesced to all such encumbrances—and any new burdens—because they knew the properties were regulated when acquired. *Id.* That is also not the law. Unconstitutional regulations "do not become less so through the passage of time or title" *Palazzolo v. Rhode Island,* 533 U.S. 606, 627 (2001).

*Second,* Plaintiffs have also stated a facial regulatory takings claim. The central purpose of the Takings Clause "is to prevent the government from 'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Palazzolo,* 533 U.S. at 618. The RSL on its face does precisely that. It forces property owners to bear the entire cost of what the New York Court of Appeals has expressly found to be a public assistance benefit. *See* Compl. ¶353-53. Moreover, the RSL compels a physical invasion of the owner's property, restricts rents to below-market rates (Compl. ¶¶ 284-88), restricts rent increases to levels far outpaced by cost increases (Compl. ¶¶ 289-294), and consistently reduces property values of regulated buildings (Compl. ¶¶ 295-302). Unlike zoning laws, the RSL does not provide any reciprocal benefit to owners, and is not intended to address any noxious use of the property. Those factors—the precise factors that the Supreme Court emphasized in *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 124 (1978), and *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393 (1922) (*see* Compl. ¶280-82)—are not randomly suffered by only some owners. They are the intended purpose of the RSL, and they apply to all rent stabilized buildings in New York. Defendants contend that the RSL can effect a taking only if it deprives owners of an economically viable use of their property. Although that assertion misstates Plaintiffs' legal theory and is incorrect as a matter of law, the Complaint alleges facts sufficient to state a claim even under that strawman theory.

Honorable Margo K. Brodie
September 16, 2019
Page 3

*Third*, as the Complaint alleges, the RSL is not rationally related (let alone narrowly tailored) to achieving any of the law's claimed objectives, including increasing the supply of housing, targeting relief to low-income populations, or promoting socio-economic or racial diversity. Therefore, the RSL violates the Constitution's guarantee of Due Process. Nothing in Defendants' letters suggest otherwise. Defendants concede that the RSL was enacted to address "an acute shortage of dwellings," (Visnauskas Letter at 3), and do not dispute the Complaint's allegations that the RSL does not create a single unit of housing and rather has *reduced* the availability of vacant apartments, making the RSL structure both self-perpetuating and self-defeating. Compl. ¶¶ 114-149. Putative Intervenors highlight the number of homeless families that are living in shelters, but do not dispute that this result persists even after fifty years of application of the RSL. Defendants' own arguments underscore that the RSL is not rationally related to addressing the issues it purports to target.

*Fourth*, Plaintiffs' claims are timely. The RSL every day imposes a physical invasion of Plaintiffs' property, limits Plaintiffs to *de minimis* rent increases due to the annual dictates of the Rent Guidelines Board (RGB), became effective with respect to Plaintiffs only due to the City Council's triennial emergency declaration in 2018, and was just renewed (and made permanent) by the New York Legislature in June 2019. This ongoing conduct by the Defendants results in continuing takings of Plaintiffs' property rights. Defendants' statute of limitations argument fails under the continuing violation doctrine that has been adopted by courts in the Second Circuit. *See, e.g., S. Lyme Prop. Owners Ass'n v. Town of Old Lyme*, 539 F. Supp. 2d 547, 557 (D. Conn. 2008) (collecting cases). It also fails under the authority relied on by Commissioner Visnauskas, which recognizes that a claim accrues only when the regulations become effective (which in this case depends upon triennial emergency declarations), or when the state generates a series of regulations (such as those implementing the RSL) that together constitute a takings. *See EklecCo NewCo LLC v. Town of Clarkstown*, 2018 U.S. Dist. LEXIS 101591, *23-26 (S.D.N.Y. June 18, 2018).

**Motions to Intervene.** On September 6, 2019, Putative Intervenors submitted a letter to the Court requesting a conference regarding a proposed motion to intervene in this case either as of right or permissively. While Plaintiffs do not believe Putative Intervenors meet the burden for intervention as of right, Plaintiffs do not oppose permissive intervention by the Putative Intervenors so long as their dismissal submissions are consolidated and filed on the same schedule as Defendants' submissions. Counsel for Plaintiffs and Counsel for Putative Intervenors have spoken. Subject to the Court's approval and in order to avoid unnecessary briefing, the Putative Intervenors consent to such permissive intervention and coordinated briefing schedules. Plaintiffs recognize that other parties might move to intervene, and Plaintiffs reserve their right to oppose such other motions if they are filed.

Honorable Margo K. Brodie
September 16, 2019
Page 4

        Respectfully submitted,

        /s/ *Andrew J. Pincus*

        Andrew J. Pincus
        *Counsel for Plaintiffs*

cc:   Rachel K. Moston, Esq. (via ECF)
      *Counsel for City Defendants*

      Michael Berg, Esq. (via ECF)
      Jonathan Conley, Esq
      *Counsel for Co-Defendants DHCR*

      Edward Josephson (via email)
      Judith Goldiner (via email)
      Faith Gay (via email)
      *Counsel for Putative Intervenors*