

Towaki Komatsu
802 Fairmount Pl. Apt. 4B
Bronx, NY 10460
Tel: 718-450-6951
E-mail: Towaki_Komatsu@yahoo.com



October 8, 2019

United States District Judge Margo Brodi
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    Community Housing Improvement Program v. City of New York,
             No. 19-cv-4087 (MKB)(RML) (E.D.N.Y.)

Dear Judge Brodi,

The letter dated 10/4/19 that Michael Berg of the New York State Attorney General's filed in this action is a nullity. This is mainly because he didn't request my consent to receive any filings in this action from him via e-mail and I haven't consented to that. Since he is an attorney, this Court mustn't grant him any leniency with respect to complying with all applicable procedures in relation to this action that includes proper service of papers. Furthermore, attorneys specialize in lying, misleading, expressing half-truths, conveniently omitting material facts, and gamesmanship. I am not among Mr. Berg's ilk in that respect.

Mr. Berg neglected to inform this court about the following pertinent facts that relate to the remarks that he expressed in the letter dated 10/4/19 that I received from him via e-mail at 5:12 pm on 10/4/19:

1. I haven't been contacted by the plaintiffs in this action nor their attorneys and have no reason to believe that views expressed by Mr. Berg in his communications to me reflect their views.

Page 1 of 15

2. The following requests for relief are among those specified by the plaintiffs in this action on page 119 and 120 in the complaint that was filed in this action:

    a. "Declare the Rent Stabilization Laws to be an unlawful violation of Due Process"

    b. "Enjoin the application and enforcement of the Rent Stabilization Laws as a violation of Due Process"

    I share those requests for relief in this action, but for reasons that aren't shared by the plaintiffs. This fact directly, decisively, and entirely rebuts the following fraudulent claim that Mr. Berg expressed in his letter dated 10/4/19:

    > "Intervention is unwarranted because Movant has failed to establish any nexus between his stated concerns and the subject matter of this action."

    Due to Mr. Berg's deceit, it seems really clear that he violated FRCP Rule 11 by having expressed the preceding fraudulent claim. For that reason, I urge this Court to swiftly impose harsh sanctions against him that will befit the public's interest by serving as an effective deterrent against him and other attorneys from making fraudulent representations to this Court and other judges.

3. I articulated sufficient grounds in the letter dated 9/30/19 that I filed in this action for this Court to enable me to appear as an amicus curiae in this action in the event that it declines my motion to otherwise intervene in it.

4. Prior to commencing this action, the New York Daily News published a news article that is entitled "De Blasio Holds first Townhall Meeting of Mayoralty in Manhattan, Talks Rent and Affordable Housing" that was written by someone named Jennifer Fermino while she was then a journalist. That article concerned a public town hall meeting that New York City Mayor Bill de Blasio conducted and appears on the Internet at the following address:

https://www.nydailynews.com/news/politics/de-blasio-holds-townhall-meeting-manhattan-article-1.2398051

The following is a relevant quote from that news article:

> "Joseph Strasburg, president of the landlord group Rent Stabilization Association, accused the mayor of using the town hall as a "re-election rally.""

One of the plaintiffs in this action is the Rent Stabilization Association. Mr. Strasburg expressed the preceding remark long before I began to be illegally prevented from attending such public town hall meetings and public resource fair meetings that the Mayor conducted after 3/15/17 and otherwise illegally subjected to discrimination with respect to those public forums by having my attendance confined to overflow rooms in retaliation for valid critical remarks that I expressed in accordance with my First Amendment rights to the Mayor on 3/15/17 during the public town hall meeting that he conducted with New York City Councilman Corey Johnson while that meeting was recorded on video. My critical remarks to the Mayor then were largely about housing laws, housing judges, and other housing matters while much of those remarks were directed against New York City Human Resources Administration Commissioner Steven Banks ("Mr. Banks") and HRA's business partners. In the letter dated 9/11/19 that I filed in this action, I alluded to the fact that I reside in a building that is managed by Urban Pathways, Inc. ("Urban") as a result of a contract that it has with HRA to do so. The following is a link to a copy of HRA's contract that I have made available on the Internet with Urban for managing the building in which I reside that I received from HRA in response to a Freedom of Information Law ("FOIL") demand that I submitted to HRA:

https://drive.google.com/open?id=1fCuThHwbHSpRkN4UPav2Werat-9hgqG1

The terms of that contract confirm that HRA is authorized to terminate Urban's role in managing the building in which I reside and replace it with a different vendor for that purpose in the event that Urban defaults on its contractual obligations with regard to that building. Although Urban has repeatedly and materially done so to my detriment and other military veterans who reside in that building partly by failing to have conditions in that building properly maintained and I have clearly and repeatedly apprised Mr. Banks and other government officials that include the Mayor, New York City Councilmen Stephen Levin and Robert Cornegy, Jr., and United States District Judge William Pauley of this fact while talking to them face-to-face, HRA has negligently allowed Urban to continue to act as the landlord of the building in which I reside and other government officials that include those I just mentioned have similarly ignored what I have expressed to them about the building in which I reside. While writing this letter, I'm doing so without hot water in the apartment where I reside for the second straight day while other distinctive housing deficiencies requiring repairs are clearly evident in the ceiling located in the hallway directly outside of my apartment's entrance. Some of the deficiencies that persist in the building in which I reside date back to 2016. Attached to this letter is an e-mail message that I sent to Mr. Banks today. That e-mail confirms that I reported to him the fact that I don't have hot water where I reside in violation of applicable law and that I asserted a legal claim against HRA about an earlier problem in 2016 with a lack of hot water where I reside because of HRA's legal duty to provide proper oversight of Urban in regards to how it manages the building in which I reside.

5. On 9/30/19, United States District Judge Lorna Schofield issued a decision that was mostly in my favor in to *Komatsu v. City of New York*, S.D.N.Y. No. 18 Civ. 3698 (LGS) (GWG).

That decision addressed illegal practices by members of the Mayor's NYPD security detail, members of the Mayor's Community Affairs Unit, New York State court officers who conspired with one another to illegally prevent me from attending the public town hall meeting that the Mayor conducted with other government officials on 4/27/17 in Long Island City in Queens and the public resource fair meeting that the Mayor conducted on 5/23/17 inside of the Bronx Supreme Court while those meetings were public forums. The following is a pertinent excerpt of remarks that Judge Schofield expressed in her 9/30/19 decision and appears in the footnote section shown on page 2 in that decision:

> "[2] The Complaint for the purpose of this motion includes the Second Amended Complaint (1:18-cv-3698, ECF Dkt. ("Dkt. No.") 45); Plaintiff's pre-motion letter (Dkt. No. 66); Affidavit if Towaki Komatsu, sworn to May 2, 2019 (Dkt 176); Affidavit of Towaki Komatsu, sworn to May 2, 2019 (Dkt. No. 177); and four letters from Plaintiff to the Court (Dkt. Nos. 124, 195, 210, 221)."

It appears that Judge Schofield used the preceding excerpt from her 9/30/19 decision to identify the entirety of my submissions in that action that she a) considered for the purpose of issuing her 9/30/19 decision in it as well as b) excluded from that consideration. On 4/5/19, I submitted an affidavit dated 4/3/19 in *Komatsu v. City of New York* that I completed on 4/3/19. That affidavit corresponds to docket number 150 ~~sub1~~ in that action. The following is a pertinent excerpt from page 28 ~~and page 24~~ in that affidavit:

> 1. Prior to trying to attend the public resource fair meeting that the Mayor held on 5/23/17, I recorded a video with a cell phone at 8:28 am on 5/23/17 in the building in which I reside. I have uploaded a copy of that video recording on the Internet at the following address that corresponds to Google Drive and anyone may view:
>
> https://drive.google.com/open?id=1w8KD51jsvNm8wups7rxWJN2ltCqomhVT
>
> That video recording shows the following:
>
> a. The ceiling above the hallway located directly outside of my apartment appeared. The paint applied to that ceiling is shown discolored. Also, the condition of the paint on that ceiling was cracked and peeling. Also, there was a hole in that ceiling then that enabled rain to leak through that hole and drip on that hallway's floor that caused a slipping hazard for people in that building. Nearly two years later, the problems with that ceiling still have not been fixed.

Judge Schofield irresponsibly and impermissibly didn't include any information about the preceding excerpt in her 9/30/19 decision. ~~On 8/29/19, I filed a letter dated 8/28/19 in that action that corresponds to docket number 245. That letter contained the same information at the top of page 42 that appears in the preceding excerpt.~~ The following is another excerpt from Judge Schofield's 9/30/19 decision that corresponds to remarks that she expressed on page 6 in it:

> On a Rule 12(b)(6) motion, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016) (internal quotation marks omitted).
>
> Courts must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (internal quotation marks omitted). "We afford a pro se litigant 'special solicitude' by interpreting a complaint filed pro se to raise the strongest claims that it suggests." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (internal quotation marks omitted).

The following is a third excerpt from Judge Schofield's 9/30/19 decision that corresponds to remarks that she expressed on page 10 in it:

> "At this stage of the litigation, the court accepts "the complaint's factual allegations as true and draw[s] all reasonable inferences in the plaintiffs' favor"

The preceding three excerpts from Judge Schofield's decision are sufficient to establish that she blatantly lied in her 9/30/19 decision by having claimed in it that she had accepted my complaint's factual allegations as true and drew all reasonable inferences in my favor in that action. In order for her to have done, she needed to incorporate the sum and substance of the information that is shown within the excerpt that appears at the top of page 6 in this letter in her 9/30/19 decision. The video recording that is referenced in that excerpt was recorded 1 hour and 1 minute before I was recorded on 5/23/17 by a video security camera that is controlled by the New York State Office of Court Administration ("OCA") and installed above the entrance to Room 105 in the Bronx Supreme Court as I walked in a public hallway on the first floor of the Bronx Supreme Court near that video security camera while I was heading to the public resource fair meeting that the Mayor and other government officials were then conducting inside of the Veterans Memorial Hall chamber located in that courthouse. I later received a video recording that was recorded by that video security camera on 5/23/17 for the entire time that I was in that courthouse on that date in response to a FOIL demand that I submitted to OCA for it. The following is a link to a copy of that video recording that I have made available on the Internet:

https://drive.google.com/open?id=1CrPPb8GZ05BgCBrAYzAK0QBVl6oxK_5j

That video recording shows the current date and time in its upper-left corner. I shared that video recording with Judge Schofield long before she issued her 9/30/19 decision. That video recording clearly shows me holding a large white bag in my right hand at 9:29 am on

5/23/17. While I was in that courthouse on 5/23/17, that bag contained a copy of an order to show cause application that I filed on 5/19/17 in a lawsuit ("my HRA lawsuit") that I commenced against HRA in January of 2017 that remained sealed on 5/23/17 at my request. That video recording also shows New York State court officer Anthony Manzi at 9:49 am on 5/23/17 illegally seizing that bag from directly in front of me in the immediate presence of other court officers and other law-enforcement personnel shortly after I lawfully placed it on a table that wasn't in use and was located in a public hallway in the Bronx Supreme Court. While I sought to attend the public resource fair meeting that the Mayor conducted on 5/23/17 inside of the Bronx Supreme Court, I intended to engage in protected whistleblowing while lawfully attending that public forum. Some of the whistleblowing that I sought to engage in then while talking with journalists, members of the general public, Mr. Banks, the Mayor, and other government officials concerned the sum and substance of my HRA lawsuit partly because an attorney for HRA named Jeffrey Mosczyc illegally and jointly with New York State Supreme Court Judge Nancy Bannon stole away my opportunity and legal right to have testified as scheduled on 4/12/17 during an oral arguments hearing in my HRA lawsuit. That lawsuit remains active, is assigned the index number of 100054/2017, and is assigned to the New York State Supreme Court in Manhattan. Judge Nancy Bannon signed my 5/19/17 order to show cause application in that lawsuit on 5/22/17. Some of my claims in that hybrid lawsuit comprised of Article 78 claims and plenary claims concerned housing matters and Judge Bannon is thankfully no longer assigned to that lawsuit. Repeated acts of judicial misconduct have occurred in that lawsuit by multiple judges assigned to it. Such acts of judicial misconduct that occurred in that lawsuit included twice disposing of that lawsuit in its entirety while I still had claims pending to be addressed in it and illegally granting an *ex-*

*parte* adjournment application that was submitted by Jeffrey Mosczyc on 4/11/17 while illegally preventing me from challenging that application before it could be lawfully granted. Judge Bannon granted that application on the same date (4/11/17) that I participated with an attorney for HRA named Marin Gerber in a hearing by telephone in litigation against HRA that was recorded on audio and was closely related to my claims in my HRA lawsuit. I wasn't notified of the application that HRA's attorney filed ex-parte in my HRA lawsuit to be granted the adjournment that Judge Bannon illegally granted on 4/11/17 until after it was illegally granted. That application was faxed to Judge Bannon's chambers on 4/5/17. All of what I just discussed occurred in spite of the fact that Judge Bannon scheduled an oral arguments hearing on 1/26/17 to be conducted on 4/12/17 in my HRA lawsuit. I intended to present oral arguments that would partly concern housing matters pertaining to where I reside on 4/12/17 during that scheduled oral arguments hearing. The information that I have just discussed is clearly sufficient to reasonably infer that HRA's attorney in my HRA lawsuit intended to and did, in fact, engage in patently illegal gamesmanship against me in that lawsuit by stealing away my opportunity and legal right to have my oral arguments hearing in that lawsuit conducted as scheduled on 4/12/17 and just one day after I had engaged in related litigation against HRA during a hearing with a different lawyer for HRA.

6. The following is a link to a video recording that I have made available on the Internet that I recorded with a cell phone on 8/25/19 at 5:25 pm inside of the building in which I reside:

    https://drive.google.com/open?id=1Usp1ZEKS4zLQxFrLRSMGx79TFTIg3whz

    That video recording shows paint that is cracked and peeling from the ceiling in the hallway located on the fourth floor in the building that is discussed within the excerpt that is shown at the top of page 6 in this letter. That recording also shows a large amount of trash in the

stairwell on the first floor in that building that is public housing for military veterans and is subsidized by HRA. The conditions that are shown in the video recording that I just discussed clearly do not befit what United States Judge William Pauley stated in the following excerpt from *USA v. New York City Housing Authority*, Case No: 18-cv-5213 (WHP)(S.D.N.Y.) that corresponds to docket entry 64 in that case as he discussed appropriate living conditions that tenants who reside in public housing are entitled to:

> "For decades, Congress has addressed the importance of ensuring that public housing residents live in decent, safe, and sanitary conditions."

The video recording that I just discussed and recorded on 8/25/19 is also significant because it confirms that deficiencies that existed on 5/23/17 in the building in which I reside and then recorded on video at 8:28 am on that date still persist in the building in which I reside due to negligence by HRA, Mr. Banks, the Mayor, Urban, and other government officials and agencies that I apprised about the deficiencies in the building in which I reside.

7. Contrary to Mr. Berg's preposterous claims, I established grounds to be granted the ability to intervene in this action. It seems that Mr. Berg may wish to be refunded whatever he paid to go to law school because it seems that he either doesn't understand that the Fourteenth Amendment is part of the U.S. Constitution or that it includes provisions that concern equal protection for similarly-situated people that I have properly invoked to be granted the ability to intervene in this action.

8. Mr. Berg improperly mischaracterized litigation that I have against the New York City Human Resources Administration ("HRA") as an effort to "challenge an administrative determination" that HRA issued. That effort is instead about challenging unlawful actions that HRA took to my detriment that are tied to a patently illegal bait-and-switch fraud and forgery that HRA's personnel committed against me with respect to a binding and fully-

enforceable apartment lease agreement that I signed in HRA's offices.

9. Mr. Berg also failed to remind this Court that 28 U.S.C. §2201(a) contains the following terms that enable this Court to create an equitable remedy for me in this action in the form of a declaration that amounts to a final judgment or decree that relates to this action's subject matter:

> (a) **In a case of actual controversy within its jurisdiction,** except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, **any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.**

(boldface formatting added for clarity)

10. Contrary to how Mr. Berg fraudulently misrepresented the plain text of FRCP Rule 24(a)(2) I in his letter dated 10/4/19 to me, the following is a pertinent excerpt from that plain text:

"claims an interest relating to the property or transaction that is the subject of the action"

By applying textualism to the preceding verbatim instead of paraphrased excerpt, it confirms that FRCP Rule 24(a)(2) doesn't require me to have "an interest in any "property or transaction" at issue in this action in order to be granted the ability to intervene in this action. Instead FRCP Rule 24(a)(2) requires me to have an interest "relating to" the property or transaction that is the subject of this action.

11. Mr. Berg's discussion about litigation in which I'm involved in other cases is patently irrelevant and fraudulent largely because I'm not contesting the constitutionality of New York State's Rent Stabilization Laws in them that I seek to do in this action.

12. Mr. Berg further fraudulently claimed to this Court that I haven't identified any cognizable

claim in the letters that I have filed in this action. That assertion by him merely confirms that he really should try to be refunded his law school's tuition because he doesn't understand the sum and substance of the U.S. Constitution's Fourteenth Amendment and how it applies to my attempt to be granted the ability to intervene in this action.

13. Although Mr. Berg stated in his 10/4/19 letter to me that some prior state court decisions that adversely impacted me are time-barred, he neglected to inform this Court that senior personnel who work for HRA that include its commissioner shirked their affirmative legal duty to ensure that I had access to effective legal assistance or legal representation from HRA's business partners when I first met HRA Commissioner Steven Banks on 3/1/16 and handed him roughly 6 court transcripts to establish that sufficient cause existed then for me to receive such legal assistance or legal representation to try to undo the state court decisions that adversely impacted me while Mr. Banks' wife (Jean Schneider) was the supervising judge citywide for New York City's housing courts and likely had sufficient power to directly or indirectly facilitate my efforts to have those adverse courts decisions undone on the merits. Mr. Berg similarly neglected to inform this Court that I may possibly be able to offset or undo the harm that I experienced from those adverse court decisions by having an attorney pursue a tortious interference claim on my behalf against the judges who issued the adverse state court decisions while engaging in non-judicial acts for which there is no judicial immunity. It appears that such claims would be subject to a 6-year statute of limitations and would therefore not be time-barred. It also appears that equitable tolling may apply to such a legal effort.

14. Mr. Berg's contention that "intervention should be denied because Movant's participation in this action would "unduly delay or prejudice the adjudication of the original parties' rights"

is greatly outweighed by the fact that New York State's Rent Stabilization Laws are unconstitutional largely because they violate the Fourteenth Amendment's due process and equal protection provisions that apply to similarly-situated people who:

   a. Didn't have the protections that New York State's Rent Stabilization Laws now offer tenants while contending with litigation in New York City's housing courts and were harmed as a proximate result of that fact when those cases ended.

   b. Can't benefit from the protections that New York State's Rent Stabilization Laws now offer tenants for active litigation because of the arbitrary and capricious effective date of New York State's new Rent Stabilization Laws.

15. The following is a pertinent excerpt from *CITIZENS AGAIST CAS. GAM., ERIE CTY. v. Kempthorne*, 471 F. Supp. 2d 295 (W.D.N.Y. 2007) that establishes that Mr. Berg's remark in his 10/4/19 letter that concerned me seeking to raise new issues in this action that are unrelated to this action's subject matter is irrelevant because the excerpt that follows confirms that I may be entitled to do so:

   > "*Amicus* participation goes beyond its proper role if the submission is used to present wholly new issues not raised by the parties. *Onondaga Indian Nation*, 1997 U.S. Dist. LEXIS 9168 at *8-9 (quoting *Concerned Area Residents for the Env't v. Southview Farm*, 834 F.Supp. 1410, 1413 (W.D.N.Y.1993)); *Wiggins Bros., Inc. v. Department of Energy*, 667 F.2d 77, 83 (Em.App.1981) (absent exceptional circumstances, *amicus curiae* cannot implicate issues not presented by the parties)."

16. Mr. Berg's remark about excessive motion practice and time-consuming ancillary litigation is conclusory and self-serving. For that reason, this Court that is a fact-finder should disregard that baseless assertion by him.

17. Mr. Berg's remark about a letter that I filed in this action about the actual instead of perceived misconduct of the U.S. Marshals Service and other security personnel that they control is entirely irrelevant because one of the responsibilities that all judges have is to

control how courthouse personnel that include security personnel conduct themselves. I made that point very clear in my 10/1/19 letter that I filed in this action.

18. Mr. Berg fraudulently neglected to mention the following in remarks he expressed about Judge Schofield's assignment to *Komatsu v. City of New York*:

    a. She has repeatedly caused orders that she issued in that action to be vacated because of her errors.

    b. She lied by claiming that I filed irrelevant filings in that action.

    c. The U.S. Supreme Court issued pertinent findings about legal standards that apply to due process rights that confirm that my right to be heard at a meaningful time and in a meaningful manner that was tailored to my circumstances and capacity to be heard outweighs page limits that Judge Schofield would likely prefer that I stay within for the submissions that I have filed in *Komatsu v. City of New York*.

    d. Judge Schofield flagrantly violated my First Amendment and Fourteenth Amendment rights by imposing an unlawful prior restraint on my legal right to submit valid petitions in *Komatsu v. City of New York* to try to be granted redress for valid grievances.

19. Mr. Berg fraudulently concealed the material fact that Judge Kuntz fraudulently claimed that I filed two non-meritorious applications to intervene in cases that he cited in his letter in spite of the fact no such determinations appeared on the dockets sheets for those cases for days that followed the date of the order in which Mr. Kuntz expressed that fraudulent finding. Mr. Kuntz also fraudulently claimed that my application to intervene in *Demirayak v. De Blasio*, E.D.N.Y. No. 18 Civ. 4723 (WFK) (RER) was frivolous. The term "frivolous" concerns actions that are taken in bad faith. My attempt to intervene in *Demirayak v. De Blasio* was

driven by a desire to persuade Mr. Kuntz to not allow the public's First Amendment rights to be violated by his decisions as I sought to use information that would likely become available in that action to substantiate claims that I asserted in *Komatsu v. City of New York*.

20. Lastly, Mr. Berg neglected to mention in his 10/4/19 letter that Judge Schofield's 9/30/19 decision in *Komatsu v. City of New York* was largely in my favor and enabled me to withstand baseless motions to dismiss that were filed in it. Mr. Berg also neglected to mention that Judge Schofield lied in that same 9/30/19 decision about materials facts that prompted me to file an appeal of that decision. He further neglected to mention in his 10/4/19 letter that I filed a 47-page letter motion on 10/4/19 in *Komatsu v. City of New York to* point out to Judge Schofield what she lied about, fraudulently concealed, overlooked, and misapprehended in her 9/30/19 decision pursuant to FRCP Rule 60.

For the reasons stated herein, the following applies:
- The motions that I filed in this action to intervene should be granted.
- This Court should treat Mr. Berg's 10/4/19 letter to me as a nullity due to defective service of papers.
- Mr. Berg should be sanctioned by this Court for the reasons that I discussed earlier.
- Mr. Berg should be directed to spend substantial time to carefully study the Fourteenth Amendment's terms.

Thank you for your time and consideration.

Regards,

Towaki Komatsu

From: Towaki_Komatsu@yahoo.com
Subject: New HRA & Urban Pathways fuck ups
Date: October 8, 2019 at 4:08 AM
To: Banksst@dss.nyc.gov
Cc: Scaliaa@dss.nyc.gov, romainp@dss.nyc.gov



Mr. Banks,

Yesterday and today, there hasn't been hot water where I reside. As you're aware, I reside in a building run by Urban Pathways, Inc. ("Urban") and HRA has been shirking its legal duty to provide oversight of how Urban operates in relation to that building with funding it gets from taxpayers through HRA's contract with Urban for that building.

You're also aware that you have lied to my face about oversight of Urban for that building. Think back to our chat during a Brooklyn public resource fair that the Mayor conducted in August of 2018 as an example. You told me then that there had been a lot of oversight of that building by HRA and HPD. One of the claims that I asserted against HRA and is pending in litigation is about a lack of hot water where I reside in 2016.

Instead of acting respobsibly, HRA's personnel have illegally and repeatedly ignored my complaints against Urban, allowed deficiencies in the building where I reside to persist, and used a fraudulent pretext to bar me from HRA's offices at 150 Greenwich Street in Manhattan to deny me my Fourteenth Amendment and First Amendment right to inspect draft contracts in those specific offices to prepare for public hearings about those contracts.

On 9/30/19, a judge issued a decision in my federal lawsuit against the City that was nearly entirely in my favor that has enabled me to proceed to discovery. Prior to doing so, she issued an order on 8/27/19 that authorized me to file a further amended complaint in it. Through such a complaint, I'm authorized to add you, other HRA personnel, and others as defendants in that action and assert valid claims against all of the defendants. I intend to soon do so, particularly since you and other HRA personnel have been and continue to be deceitful instead of cooperative in performing your legal duties.

From,

Towaki Komatsu