ORIGINAL
RD 10/22/19

Towaki Komatsu
802 Fairmount Pl. Apt. 4B
Bronx, NY 10460
Tel: 718-450-6951
E-mail: Towaki_Komatsu@yahoo.com


RECEIVED OCT 10 2019 PRO SE OFFICE

October 10, 2019

Hon. Margo Brodi
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:   <u>Community Housing Improvement Program v. City of New York,</u>
          No. 19-cv-4087 (MKB)(RML) (E.D.N.Y.)

Dear Judge Brodi,

My name is Towaki Komatsu. I'm filing this letter pursuant to FRCP Rule 60 to request reconsideration of the decision that you issued on 10/8/19 (see docket number 41) to deny the application that I filed in this action to be granted intervenor status pursuant to FRCP Rule 24 or to appear as an amicus curiae in the alternative. When you issued your decision, you overlooked the following text that appeared on the first page of the letter dated 9/11/19 that I filed in this action to apply to intervene in it in which I clearly expressed that the new New York rent laws were unconstitutional because they violated the Fourteenth Amendment:

> "The new rent laws that New York State enacted and are the subject of this action will continue to be discriminatory with respect to tenants who have been contending with legal disputes against landlords that predate the effective date of the new New York State rent laws. In this respect, those new laws flagrantly violate the U.S. Constitution's Fourteenth Amendment equal protection provisions that pertain to similarly-circumstanced people."

The new New York rent laws provide me absolutely no relief, no redress, and no legal protections that correspond to valid grievances that I have that are attributable to the fact that there hasn't been adequate oversight of how New York City Housing Court judges have

Page 1 of 6

operated. For example, the New York State Commission on Judicial Conduct does not have jurisdiction over New York City Housing Court judges. Due to such inexcusable lack of oversight, my due process rights were flagrantly violated by housing court judges and I experienced irreparable harm as a result. In order for the new New York rent laws to be constitutional some type of remedy needs to be belatedly devised and implemented to relieve people of the undue, irreparable, and substantial harm that they experienced and were proximately caused to a large degree by the fact the legal protections now offered to tenants by the new New York rent laws were not available to other tenants when they had to contend with housing court cases. Furthermore, on the same date that I'm filing this new submission in this action, I'm contending with an entirely frivolous and retaliatory housing court case that was filed against me in January of 2019 by business partner of the New York City Human Resources Administration ("HRA") named Urban Pathways, Inc. ("Urban") that is the landlord for the building in which I reside. Due to the effective date of the new New York rent laws that are the subject of this action, I can't benefit from them in that housing court case. That fact amounts to discrimination that this Court must not condone. The housing court case to which I just referred is entirely frivolous and retaliatory largely because HRA subjected me to an illegal bait-and-switch fraud and forgery jointly with Urban in regards to a binding and fully-enforceable apartment lease agreement that I signed on 2/16/16 in HRA's offices with Lisa Lombardi of Urban to be issued a private apartment shortly thereafter for the entirety of apartment 4C with no roommate in the apartment building where I reside. However, HRA's records that I received on or about 2/8/17 indicate that one of its personnel changed an apartment number associated with me just 2 days after I signed that binding and fully-enforceable apartment lease agreement. On 3/7/16, one of Urban's personnel issued me an invalid lease agreement that I contained an

illegally forged copy of my signature from the lease that I signed on 2/16/16. He did so when I visited the building where I reside on that date to be issued the keys for my new apartment. Although I immediately objected to the fact that someone illegally changed my lease, no one would help me to be granted possession of the specific apartment for which I signed the lease agreement on 2/16/16. I reported that problem to HRA and New York City Councilman Ben Kallos less than one week after I discovered it. As a result, I was illegally coerced to reluctantly accept a tiny room in a shared apartment for apartment 4B in the building in which I reside while being assigned a mentally unstable roommate named Ronald Sullivan. Mr. Sullivan subsequently tried to assault me on 5/12/16 in the living room of the apartment in which I reside in the presence of one of Urban's personnel who physically then restrained Mr. Sullivan. However, that worker wasn't present as Mr. Sullivan criminally assaulted me by punching the area on my head near my left temple more than 15 times on 7/2/16 in that same living room. That assault caused me to have been diagnosed with a concussion and caused me memory loss and a host of other health problems. That 7/2/16 assault was entirely foreseeable and preventable largely because I reported the attempted 5/12/16 assault to Ms. Lombardi and Ronald Abad of Urban less than 2 weeks after it occurred, the person who restrained Mr. Sullivan on that date also reported my altercation with Mr. Sullivan to his supervisor on the date it occurred, and I reported that altercation to a representative of one of HRA's business partners on 5/12/16 who dealt with housing matters as well. However, no one agreed to promptly and responsibly evict Mr. Sullivan in response to my valid complaints against him. In addition, after Mr. Sullivan assaulted me on 7/2/16, he fled from the building in which I reside and made incriminating remarks to someone who then resided in it about how he assaulted me in it on that date in the apartment that I then shared with him. Although the NYPD arrested Mr. Sullivan on 7/11/16 for having assaulted me

on 7/2/16, the NYPD immediately released him and allowed him to promptly resume being my roommate instead of properly and responsibly keeping him in its custody until I would be issued an order of protection against him. Due to that fact and the fact that it took until October of 2016 for me to be issued that order of protection, I had to endure the nightmare of having the same person who viciously assaulted me on 7/2/16 continue to be my roommate while I had no idea in regards to if and when he would next explode like a time-bomb and assault me again and whether I would react to that by perhaps killing him in self-defense.

In January of 2017, I filed an entirely valid lawsuit against HRA that remains active and is assigned to the New York State Supreme Court in Manhattan. That lawsuit includes claims against HRA about that assault as well as its failure to provide proper oversight of Urban with respect to how it operates as the landlord of the building in which I reside. Four judges have been assigned to that lawsuit and two of them (Judges Nancy Bannon and Lyle Frank) illegally disposed of it in its entirety while I had claims in it that continued to be pending for resolution. After that lawsuit was restored in response to those illegal terminations of it, one of the judges who illegally disposed of it has unconscionably been permitted to continue to be assigned to it in defiance of my fundamental due process rights. What I have just discussed directly relates to your contention that I can raise my grievances in a separate action and appears to sufficiently rebut it. If other judges honored and upheld my constitutional due process rights, then your contention would likely be correct. However, that just isn't the case due to judicial misconduct.

The plaintiffs in this action are also challenging the new New York rent laws on constitutional grounds, but for reasons that are significantly different than mine. In your 10/8/19 decision, you

also expressed that I could raise my grievances in a separate action without specifying which particular grievances you were referring to and without specifying how I could raise those grievances in a different action by identifying the legal forum that would consider them.

Although you may think that much of the preceding information that I presented above is irrelevant to the matters in this action, that isn't true because clearly demonstrates the extent of substantial, irreparable, and unimaginable harm that can occur as a result of New York's rent laws not having adequate protections for tenants. In closing, attached is a printout that shows pertinent excerpts from an e-mail message that I sent on 9/29/19 at 12:51 pm to HRA Commissioner Steven Banks that was mostly about the illegal bait-and-switch fraud and forgery that HRA and Urban perpetrated against me in regards to the binding and fully-enforceable apartment lease agreement that I signed on 2/16/16 in HRA's offices with Urban that I have discussed in this letter. He and other HRA personnel have consistently and illegally stonewalled me in the past in regards to complying with Freedom of Information Law ("FOIL") demands pertaining to that issue and others. I have repeatedly talked with Mr. Banks face-to-face and he has repeatedly lied to my face during those conversations while I have legally recorded several of them on audio.

In the event that this Court needs clarification about anything that I have discussed in this letter, I respectfully request a conference with this Court for that purpose.

Thank you for your time and consideration.

Regards,

Towaki Komatsu

From: Towaki Komatsu <towaki_komatsu@yahoo.com>
Subject: Demand for HRA records
Date: September 29, 2019 at 12:51:42 PM EDT
To: "Banks, Steven (HRA)" <banksst@dss.nyc.gov>, HRA Freedom of Information Law Office <Foil@hra.nyc.gov>
Cc: "Scalia, Ann Marie (HRA)" <scaliaa@dss.nyc.gov>, "Calhoun, Martha (HRA)" <calhounm@dss.nyc.gov>, "Spitzberg, Samuel L (OTDA)" <samuel.spitzberg@otda.ny.gov>

Mr. Banks,

I'm ordering you and the rest of HRA to immediately provide me all records that have been in HRA's possession that answer the following questions in accordance with my First Amendment rights, Fourteenth Amendment rights, Fifth Amendment rights, FOIL, and 5 U.S.C. 552(a) partly to facilitate my preparations for an upcoming fair hearing that OTDA will conduct for claims that I have asserted against HRA:

1. What information did HRA have about where I resided **a)** immediately prior to 2/16/16 and **b)** immediately prior to HRA having made a change on 2/18/16 to an apartment number associated with me?

2. When HRA personnel made a change on 2/18/16 to information about an apartment number associated with me, what was the specific address that corresponded to the change that it made after it made that change?

3. Who directed HRA personnel to make this change on 2/18/16?

4. What sources of information did HRA use to make this change on 2/18/16?

5. Were the following members of HRA aware of this change that was made on 2/18/16 and, if so, on which dates did they become aware of this change? HRA Commissioner Steven Banks, Jeffrey Mosczyc, Ann Marie Scalia, Marin Gerber, Martha Calhoun, and Jordan Dressler.

6. To what degree has HRA, DHS, and DSS been responsible for providing proper oversight of Urban Pathways, Inc. ("Urban") in regards to how it has operated, managed, and maintained the building in which I have resided since March of 2016?

7. To what degree has HRA, DHS, and DSS been responsible for providing proper oversight of Urban in regards to how its personnel have issued apartment lease agreements that correspond to the building in which I reside and fully complied with the terms of those agreements?

8. To what degree has HRA, DHS, and DSS been responsible for providing proper oversight of Urban to make certain that Urban has had sufficient security consistently in place within the building in which I have resided since March of 2016?

9. Which personnel of HRA, DHS, and DSS have received complaints that I reported to HRA, DHS, and DSS against Urban in relation to where I reside, when did they receive those complaints, and what specific actions did they take in response to those complaints and when did they take those actions?

13. Which personnel of HRA, DHS, and DSS have received copies of the "Verification of Residency" document that I received from Urban and provided to HRA personnel in September of 2018 in HRA's office located in the Bronx on Canal Street for the purpose of having HRA pay storage expenses on my behalf in accordance with applicable law? The "Verification of Residency" document to which I just referred clearly indicates that Urban claimed in it that I have been residing since 2/16/16 in apartment 4D located in the building in which I have instead been residing in apartment 4B while I never resided in that building prior to 3/7/16.

14. Who illegally manufactured the fraudulent and entirely invalid apartment lease agreement that **a)** I never signed nor otherwise agreed to, **b)** corresponds to Room 1 within apartment 4B that is located in the building in which I reside, and **c)** HRA personnel that include Jeffrey Mosczyc and Marin Gerber have fraudulently claimed in legal proceedings is the apartment lease agreement that I signed on 2/16/16 with Urban?

15. Who made the decision to illegally manufacture the fraudulent and invalid apartment lease agreement that I just discussed?

16. Who made the decision to illegally forge my signature from the actual and only apartment lease agreement that I signed on 2/16/16 into the fraudulent and invalid apartment lease agreement that I just discussed?

17. Who illegally forged my signature from the actual and only apartment lease agreement that I signed on 2/16/16 into the fraudulent and invalid apartment lease agreement that I just discussed?

18. In light of the fact that Urban issued me a "Verification of Residency" document in September of 2018 that fraudulently claims that I have resided in apartment 4D within the building in which I reside, why has HRA and DSS claimed that I reside in permanent housing with respect to the specific apartment of 4B in which I have resided without a valid apartment lease agreement?

As a reminder, Ann Marie Scalia issued me a fully-enforceable and binding agreement on 8/1/17 via e-mail on HRA's behalf in which she stated the following in a PDF file that was attached to it:

"We will continue to try to address your concerns and assist you in any way possible."

Since there was no caveat, disclaimer, nor qualifying remark that could otherwise limit the enforceability of that agreement, its duration, and scope, that agreement was then and remains fully-enforceable and binding upon HRA.