UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMUNITY HOUSING IMPROVEMENT PROGRAM, RENT STABILIZATION ASSOCIATION OF N.Y.C., INC., CONSTANCE NUGENT-MILLER, MYCAK ASSOCIATES LLC, VERMYCK LLC, M&G MYCAK LLC, CINDY REALTY LLC, DANIELLE REALTY LLC, FOREST REALTY, LLC, <br><br>           Plaintiffs, <br><br>      v. <br><br> CITY OF NEW YORK, RENT GUIDELINES BOARD, DAVID REISS, CECILIA JOZA, ALEX SCHWARZ, GERMAN TEJEDA, MAY YU, PATTI STONE, J. SCOTT WALSH, LEAH GOODRIDGE, AND SHEILA GARCIA, IN THEIR OFFICIAL CAPACITIES AS CHAIR AND MEMBERS, RESPECTIVELY, OF THE RENT GUIDELINES BOARD, AND RUTHANNE VISNAUSKAS, IN HER OFFICIAL CAPACITY AS COMMISSIONER OF NEW YORK STATE HOMES AND COMMUNITY RENEWAL, DIVISION OF HOUSING AND COMMUNITY RENEWAL, <br><br>           Defendants. | 19 Civ. 4087 (MKB) (RLM) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF COMMISSIONER RUTHANNE VISNAUSKAS'S
MOTION TO DISMISS THE COMPLAINT**


LETITIA JAMES
Attorney General
State of New York
*Attorney for Commissioner Visnauskas*
28 Liberty Street
New York, New York 10005
(212) 416-8651


MICHAEL A. BERG
Assistant Attorney General

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ............................................................................................................................. 2

I.    THE RENT STABILIZATION LAWS DO NOT EFFECTUATE A PHYSICAL
      TAKING ......................................................................................................................... 2

II.   THE RENT STABILIZATION LAWS DO NOT EFFECTUATE A REGULATORY
      TAKING ......................................................................................................................... 7

III.  PLAINTIFFS' DUE PROCESS CLAIM FAILS AS A MATTER OF LAW ................. 10

      A.  Plaintiffs' Due Process Claim Is Barred Under Applicable Case Law ...................... 10
      B.  The RSL Is Subject To Rational Basis Review ......................................................... 11
      C.  The RSL Is Rationally Related To Legitimate State Policy Goals ............................ 13

          1.  Plaintiffs Cite No Case Law Supporting Their Due Process Claim .................... 14
          2.  Plaintiffs Urge This Court To Act As A Super-Legislature ................................ 14
          3.  Plaintiffs' Arguments Defy Logic ..................................................................... 17

CONCLUSION ......................................................................................................................... 18

# TABLE OF AUTHORITIES

CASES                                                                 Page(s)

*Buffalo Teachers Fed'n v. Tobe*,
    464 F.3d 362 (2d Cir. 2006)................................................................3

*CCA Assocs. v. United States*,
    667 F.3d 1239 (Fed. Cir. 2011)........................................................13

*City of Cleburne v. Cleburne Living Ctr.*,
    473 U.S. 432 (1985)..........................................................................13

*City of New Orleans v. Dukes*,
    427 U.S. 297 (1976)..........................................................................17

*Civil Serv. Employees Ass'n v. Helsby*,
    439 F. Supp. 1272 (S.D.N.Y. 1977).................................................17

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*,
    915 F. Supp. 2d 574 (S.D.N.Y. 2013)...............................................7

*Doe v. Lima*,
    270 F. Supp. 3d 684 (S.D.N.Y. 2017), *aff'd*, 758 F. App'x 181 (2d Cir. 2019).....................11

*Exxon Corp. v. Governor of Md.*,
    437 U.S. 117 (1978)..........................................................................15

*Fed. Home Loan Mortg. Corp. v. N.Y. State Div. of Hous. & Cmty. Renewal*,
    83 F.3d 45 (2d Cir. 1996)..........................................................3, 6, 8, 10

*Ferguson v. Skrupa*,
    372 U.S. 726 (1963)..........................................................................15

*General Elec. Co. v. N.Y.S. Dep't of Labor*,
    936 F.2d 1448 (2d Cir. 1991)..............................................................7

*Gilbert v. City of Cambridge*,
    745 F. Supp. 42 (D. Mass. 1990), *aff'd*, 932 F.2d 51 (1st Cir. 1991)......................12

*Greystone Hotel Co. v. City of New York*,
    13 F. Supp. 2d 524 (S.D.N.Y. 1998).....................................6-7, 13-14

*Harmon v. Markus*,
    412 F. App'x 420 (2d Cir. 2011) ................................................ passim

*Horne v. Dep't of Agric.*,
    135 S. Ct. 2419 (2015)........................................................................4

*In re Santiago-Monteverde*,
   24 N.Y.3d 283, 998 N.Y.S.2d 144 (2014) ........................................................ 8-9

*Kaufman v. City of N.Y.*,
   717 F. Supp. 84 (S.D.N.Y. 1989) ...................................................................12

*Knight v. Dugger*,
   863 F.2d 705 (11th Cir. 1988) .......................................................................14

*Lingle v. Chevron U.S.A. Inc.*,
   544 U.S. 528 (2005).........................................................................................2

*Loretto v. Teleprompter Manhattan CATV Corp.*,
   458 U.S. 419 (1982).....................................................................................4, 7

*Manocherian v. Lenox Hill Hosp.*,
   84 N.Y.S.2d 385 (1994).................................................................................13

*Murr v. Wisconsin*,
   137 S. Ct. 1933 (2017).....................................................................................9

*Palazzolo v. Rhode Island*,
   533 U.S. 606 (2001).........................................................................................9

*Penn Central Transp. Co. v. New York City*,
   438 U.S. 104 (1978)..................................................................................... 9-10

*Pennell v. City of San Jose*,
   485 U.S. 1 (1988) ....................................................................................... 12-14

*Perez v. Zenk*,
   No. 04 Civ. 5069 (CBA), 2005 WL 990696 (E.D.N.Y. Apr. 11, 2005).................13

*Rancho de Calistoga v. City of Calistoga*,
   800 F.3d 1083 (9th Cir. 2015) .........................................................................6

*Reno v. Flores*,
   507 U.S. 292 (1993)........................................................................................13

*Rent Stabilization Ass'n of City of N.Y. v. Dinkins*,
   5 F.3d 591 (2d Cir. 1993)........................................................................ 7-8, 10

*Rent Stabilization Ass'n v. Higgins*,
   83 N.Y.2d 156, 608 N.Y.S.2d 930 (1993) .................................................3, 6, 14

*Richardson v. City & Cnty. of Honolulu*,
   802 F. Supp. 326 (D. Haw. 1992), *certified question answered*, 868 P.2d 1193
   (Haw. 1994), *aff'd*, 124 F.3d 1150 (9th Cir. 1997)..................................................3

*San Francisco Apartment Ass'n v. City & Cnty. of San Francisco*,
    881 F.3d 1169 (9th Cir. 2018) ............................................................................12

*Shelby Cnty., Ala. v. Holder*,
    570 U.S. 529 (2013) (Ginsburg, J., dissenting) ....................................................18

*Southview Assocs., Ltd. v. Bongartz*,
    980 F.2d 84 (2d Cir. 1992).................................................................................4, 7

*St. Christopher Assocs., L.P. v. United States*,
    511 F.3d 1376 (Fed. Cir. 2008).............................................................................6

*Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envt'l Prot.*,
    560 U.S. 702 (2010).............................................................................................11

*Suitum v. Tahoe Reg'l Planning Agency*,
    520 U.S. 725 (1997).............................................................................................7

*United States v. Salerno*,
    481 U.S. 739 (1987)..........................................................................................7-8

*Usery v. Turner Elkhorn Mining Co.*,
    428 U.S. 1 (1976)...............................................................................................12

*Village of Belle Terre v. Boraas*,
    416 U.S. 1 (1974), *aff'd*, 891 F.2d 446 (2d Cir. 1989)........................................12

*W. 95 Hous. Corp. v. N.Y.C. Dep't of Hous. Pres. & Dev.*,
    31 F. App'x 19 (2d Cir. 2002) ...............................................................3, 5, 8, 10

*Washington State Grange v. Washington State Republican Party*,
    552 U.S. 442 (2008)..........................................................................................7-8

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) (Stevens, J. concurring in the judgment)...........................8, 11

*Wellswood Columbia, LLC v. Town of Hebron*,
    No. 3:10 Civ. 1467 (VLB), 2013 WL 356619 (D. Conn. Jan. 29, 2013) , *on
    reconsideration in part*, 2013 WL 5435532 (Sept. 30, 2013) ................................11

*Yee v. City of Escondido*,
    503 U.S. 519 (1992)........................................................................................ 3, 5-6

*Zeigler v. Town of Kent*,
    258 F. Supp. 2d 49 (D. Conn. 2003)....................................................................15

FEDERAL CONSTITUTIONAL PROVISIONS, STATUTES AND RULES

U.S. Const., art. I, § 10, cl. 17............................................................................ passim

U.S. Const., amend. V ................................................................................... passim

U.S. Bankr. Code, Ch. 7 ..................................................................................... 8-9

Bankruptcy Code ............................................................................................... 9

Fed. R. Civ. P. 12(b)(6) .................................................................................. 1-2

## State Statutes and Regulations

N.Y. Rent Stabilization Laws ........................................................................ passim

9 N.Y.C.R.R.
    § 2520.11(e) .................................................................................................5
    § 2524.5 ......................................................................................................5
    § 2524.5(a)(2) ..........................................................................................4-5

N.Y.C. Admin. Code § 26-511(b)(9)(b) ..........................................................4

## Miscellaneous Authorities

James L. Oakes, *"Property Rights" in Constitutional Analysis Today*, 56 Wash.
    L. Rev. 583, 589 (1981) .............................................................................4

https://www.urban.org/sites/default/files/publication/99646/rent_control._what_d
    oes_the_research_tell_us_about_the_effectiveness_of_local_action_1.pdf (last
    accessed Jan. 23, 2020) .............................................................................16

Defendant RuthAnne Visnauskas, in her official capacity as Commissioner of the New York State Division of Housing and Community Renewal ("DHCR"), respectfully submits this reply memorandum of law in further support of her motion to dismiss the Complaint, dated July 15, 2019 (ECF No. 1), pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## PRELIMINARY STATEMENT

As demonstrated in her moving brief, Plaintiffs have failed to state plausible claims against Commissioner Visnauskas under either the Takings Clause or the Due Process Clause with respect to New York's Rent Stabilization Laws ("RSL"). Their arguments in opposition to dismissal are unavailing and rely on a hodgepodge of inapposite case law, dissenting opinions by individual Supreme Court justices, contested economic and social science theories, and mischaracterizations of defendants' arguments.

First, the RSL regulates the economic relations between landlords and tenants of rent-regulated apartments. It does not result in a seizure of property or the deprivation of owners' property rights. Thus, under controlling precedent, Plaintiffs' attempt to allege a physical taking of property should be dismissed. (*See* Point I, *infra*.)

Second, the RSL does not deprive owners of all economic use of their property. Nor does it single out any individuals or a group for disparate treatment. As such, Plaintiffs' regulatory taking claim fails. (*See* Point II, *infra*.)

Third, courts have previously held that the RSL is reasonably related to the valid legislative purposes of protecting tenants and preserving affordable housing. Plaintiffs cite no

---

[1] Capitalized terms and abbreviations have the same meanings as in Commissioner Visnauskas's Memorandum of Law, served on November 1, 2019 ("State Memorandum" or "State Mem."). Plaintiffs' Omnibus Opposition to Defendants' and Intervenors' Motions to Dismiss, served on December 13, 2019, is cited as "Plaintiffs' Opposition" or "Pl. Opp." The amicus briefs filed by the Real Estate Board of New York ("REBNY") (ECF No. 65) and National Association of Home Builders ("NAHB") (ECF No. 66-1), on December 20, 2019, are cited as "REBNY Br." and "NAHB Br.," respectively.

case law to the contrary, but instead rely on contested studies and analyses that the Legislature found unpersuasive when it considered, renewed, and amended the RSL in 2019. As such, Plaintiffs' due process claim also requires dismissal. (*See* Point III, *infra*.)

Accordingly, this action should be dismissed as against Commissioner Visnauskas with prejudice pursuant to Rule 12(b)(6).

## ARGUMENT

## I.     THE RENT STABILIZATION LAWS DO NOT EFFECTUATE A PHYSICAL TAKING

Controlling case law and elementary logic distinguish physical takings from regulatory takings. Physical takings require a government occupation or encroachment on property, which does not exist in this case. As set forth in Commissioner Visnauskas's moving brief, the RSL does not result in any physical encroachment on Plaintiffs' property, but merely regulates the economic relations between property owners and tenants. (State Mem. at 13-20.) As such, Plaintiffs' physical taking claim is subject to dismissal for failure to state a claim.

Plaintiffs' Opposition attempts to blur the clearly established distinction between physical and regulatory takings. (*See* Pl. Opp. at 18-32.) But the cases clearly differentiate the two theories, and just as clearly hold that challenges to state rent controls must be analyzed under the rubric of regulatory takings. As the Supreme Court has held, a physical taking requires "a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). Similarly, as the Second Circuit has explained:

> Physical takings … occur when the government physically takes possession of an interest in property for some public purpose. The fact of a taking is fairly obvious in physical takings cases: for example, the government might occupy or take over a leasehold interest for its own purposes, or the government might take over a part of a rooftop of an apartment building so that cable access may be brought to residences within[.]

2

*Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006) (citations omitted).

By contrast, "when the government acts in a regulatory capacity, such as when it bans certain uses of private property, or ***limits the rent a landlord may charge tenants***, or prohibits landlords from evicting tenants for refusing to pay higher rents, the question of whether a taking has occurred is more complex." *Id.* (emphasis added) (citations omitted). Such cases are analyzed as "regulatory takings because they do not involve a categorical assumption of property." *Id.* (citations omitted). As another court noted: "A physical taking occurs when a governmental entity authorizes a permanent physical occupation of real property. On the other hand, the regulatory taking issue typically arises when a government regulation, such as a zoning regulation or ***a rent control law***, affects a property owner's ability to use his land." *Richardson v. City & Cnty. of Honolulu*, 802 F. Supp. 326, 331 (D. Haw. 1992) (emphasis added), *certified question answered*, 868 P.2d 1193 (Haw. 1994), *aff'd*, 124 F.3d 1150 (9th Cir. 1997).

Judicial rulings applying these principles foreclose Plaintiffs' physical taking claim. The Second Circuit, relying on Supreme Court precedent, has held that "where, as here, 'a property owner offers property for rental housing, … governmental regulation of the rental relationship does not constitute a physical taking.'" *Harmon v. Markus*, 412 F. App'x 420, 422 (2d Cir. 2011) (summary order) (quoting *Fed. Home Loan Mortg. Corp. v. N.Y. State Div. of Hous. & Cmty. Renewal* ["*FHLMC*"], 83 F.3d 45, 47-48 (2d Cir. 1996) (citing *Yee v. City of Escondido,* 503 U.S. 519, 529 (1992)); *also citing Rent Stabilization Ass'n v. Higgins*, 83 N.Y.2d 156, 170, 608 N.Y.S.2d 930, 936 (1993). Additionally, it is well established that "the RSL regulates land use rather than effecting a physical occupation." *W. 95 Hous. Corp. v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 31 F. App'x 19, 21 (2d Cir. 2002). *See also Harmon*, 412 F. App'x at 422; *FHLMC*, 83 F.3d 45, 47-48.

3

The RSL does not result in the appropriation of Plaintiffs' property. *Cf. Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2421 (2015) (holding that government seizure of a portion of plaintiffs' crops was a physical taking). Nor, despite Plaintiffs' strained argument to the contrary, does the RSL result in a permanent physical encroachment on Plaintiffs' realty. *Cf. Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982). Plaintiffs' heavy reliance on *Loretto* is entirely misplaced. (*See* Pl. Opp., *passim*.) *Loretto* involved a "minor but permanent physical occupation of an owner's property" by the installation of a television cable across the roof and side of the building. *See id.* at 421. By contrast, Plaintiffs here neither allege nor argue—as they cannot—that the RSL requires the placement of any physical structures or facilities on buildings that contain rent-stabilized apartments. (*See* Compl.; Pl. Opp., *passim*.)

Equally unpersuasive is Plaintiffs' hyperbolic assertion that "the RSL deprives owners of every important 'stick' in the 'bundle' of property rights, rendering owners the mere caretakers of property controlled by the government." (Pl. Opp. at 19.) To the contrary, the RSL has no effect on several important "sticks" in the "bundle" of property rights, such as the rights to income and profits, capital, immunity from expropriation by others or the government, and the right to convey the realty by sale or bequest. *See* James L. Oakes, *"Property Rights" in Constitutional Analysis Today*, 56 Wash. L. Rev. 583, 589 (1981), *cited in Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 95 (2d Cir. 1992).

On its face, the RSL does not "deprive" owners of their right to use their own property or exclude others from it. The RSL accords owners of rent-stabilized properties the right to:

- recover possession based on an immediate and compelling necessity for their own use and occupancy, N.Y.C. Admin. Code § 26-511(b)(9)(b);

- remove from rent regulation a building that it is going to demolish after finding tenants suitable housing and paying their relocation expenses, 9 N.Y.C.R.R. § 2524.5(a)(2);

4

- withdraw a building constructed after 1974 from rent stabilization with a showing of substantial rehabilitation, *id.* § 2520.11(e);

- withdraw a unit from rent stabilization for commercial use, *id*. § 2524.5;

- withdraw a building from rent stabilization upon a showing that redressing substantial building-code violations would be financially impracticable, *id*.; and

- apply to DHCR for a hardship exemption on the basis that that the guidelines do not afford them reasonable income, *id.*

To the extent that Plaintiffs contend these rights are insufficient, or impose too great a regulatory burden, their arguments are irrelevant to their physical taking claim. Moreover, the Second Circuit expressly rejected this contention. *See Harmon*, 412 F. App'x at 422 (affirming dismissal of physical taking claim because owners retained the rights to recover possession due to "immediate and compelling necessity" for their own personal use and occupancy, and to "evict an unsatisfactory tenant") (citation omitted).

Plaintiffs unsuccessfully attempt to distinguish *Yee,* which denied a physical taking claim targeting an ordinance that regulated rents in mobile home parks. (Pl. Opp. at 20-21). But the Second Circuit has repeatedly relied on *Yee* to hold that the RSL does not result in a physical taking. *See, e.g., Harmon*, 412 F. App'x at 422; *W. 95 Hous. Corp.*, 31 F. App'x at 21.

Specifically, Plaintiffs contend that the RSL is distinguishable from the ordinance in *Yee* on the ground that the RSL requires lease renewals to tenants and their lawful successors. (Pl. Opp. at 20-21.) But that was true in *Yee* as well:

>In *Yee,* a law severely limited the reasons for which park owners
>could evict their mobile home tenants, prohibited the owners from
>refusing to lease to their tenants' transferees if they could pay, and
>limited rents charged on mobile home plots, with the result that the
>tenant (or successor) became effectively a permanent occupant of the
>park and the increased value of his mobile home (because of the
>below-market rent) was in effect taken from the park owner's
>property. Nevertheless, the Court held that since the park owners had
>voluntarily rented their land to mobile home owners, even the
>inability to choose tenants' successors or exclude certain occupants
>did not amount to a physical taking: "[I]t does not convert regulation
>into the unwanted physical occupation of land. Because they
>voluntarily open their property to occupation by others, petitioners
>cannot assert a *per se* right to compensation based on their inability to
>exclude particular individuals."

*Greystone Hotel Co. v. City of New York*, 13 F. Supp. 2d 524, 527 (S.D.N.Y. 1998) (quoting

*Yee,* 503 U.S. at 531 (internal citation omitted)). Thus, the alleged infirmities of the RSL are

virtually identical to those alleged by the mobile home park owners in *Yee*, which the Supreme

Court held legally deficient in stating a claim for a physical taking. *See also Higgins*, 608

N.Y.S.2d at 936 ("[T]he fact that an owner must offer a renewal lease to a departed tenant's …

family member – potentially a stranger to the owner – [does not] give rise to … a physical

occupation.") (citing *Yee,* 503 U.S. at 527-28).

　　　　Accordingly, courts have uniformly rejected property owners' claims that rent control

and rent stabilization laws, including the RSL, amount to a physical taking of property. *See*

*Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083, 1088 (9th Cir. 2015) (analyzing

challenge to rent control ordinance as a regulatory, not a physical challenge, and rejecting

challenge); *Harmon*, 412 F. App'x at 422 (holding that RSL does not result in physical taking);

*St. Christopher Assocs., L.P. v. United States*, 511 F.3d 1376, 1385 (Fed. Cir. 2008) (holding that

the U.S. Department of Housing and Urban Development's denial of a requested rent increase

was not a physical taking of property); *FHLMC*, 83 F.3d at 47 (rejecting the argument that rent

controls amount to a physical taking as contrary to settled law); *Southview Assocs*, 980 F.2d at 95 (holding that Vermont environmental regulations that prevented construction on plaintiff's land did not result in physical taking); *Greystone Hotel Co.*, 13 F. Supp. 2d at 527.

In sum, the RSL neither ousts property owners nor physically appropriates their property, but regulates the landlord-tenant relationship in the interest of protecting tenants and preserving affordable housing. Thus, the RSL's alleged constraints on ownership do not amount to a physical taking of property. *See, e.g., Southview Assocs.*, 980 F.2d at 95 (citing *Loretto*, 458 U.S. at 435, n.12). Accordingly, "there has been no physical taking." *Id*.

## II.   THE RENT STABILIZATION LAWS DO NOT EFFECTUATE A REGULATORY TAKING

In her moving brief, Commissioner Visnauskas demonstrated that the Complaint failed to state a facial challenge to the RSL on the theory that the law effects a regulatory taking of Plaintiffs' property. Plaintiffs' opposition does nothing to undermine that conclusion.

To prevail on a facial regulatory taking challenge, Plaintiffs must establish that the RSL "deprive[d] the owner of any economically viable use of his property," *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 736 n.10 (1997), and that "*no set of circumstances* exists under which the [challenged a]ct would be valid[.]" *Rent Stabilization Ass'n of City of N.Y. v. Dinkins*, 5 F.3d 591, 595 (2d Cir. 1993) (italics and bracketed material in original; citation omitted) ["*RSA*"]. *See also* State Mem. at 15 (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)); *General Elec. Co. v. N.Y.S. Dep't of Labor*, 936 F.2d 1448, 1456 (2d Cir. 1991); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 613, n.18 (S.D.N.Y. 2013). Plaintiffs do not dispute these principles, nor, with one incorrect exception,[2] do they

---

[2] In a footnote, Plaintiffs incorrectly assert that "the Supreme Court has observed" that *Salerno*'s "no set of circumstances" standard "has itself been criticized by the Court." (Pl. Opp. at 31, n.15 (citing *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008)). To the

address the cited cases.

The State Memorandum also demonstrated that Plaintiffs' facial regulatory taking claim is foreclosed by Second Circuit precedent. (State Mem. at 20-22 (discussing *W. 95 Hous. Corp.*, 31 F. App'x at 21; *FHLMC*, 83 F.3d at 48; *RSA*, 5 F.3d at 595).) These precedents mandate dismissal of Plaintiffs' regulatory taking claim. Further, the State Memorandum showed that the "mere diminution" in the value of Plaintiffs' property does not state a regulatory taking claim. (State Mem. 22-23.)

Plaintiffs' opposition attempts to mount a twofold response. First, Plaintiffs misrepresent the State's position as relying on some purported "immunity" from facial challenge as long as individual owners can assert as-applied challenges. (Pl. Opp. at 39.) Rather, consistent with the case law, the State submits that Plaintiffs have failed to raise a facial challenge because the RSL does not deprive them of all economically viable use of their property, and Plaintiffs have not plausibly alleged that there is no set of circumstances in which the RSL can be applied constitutionally.

Second, Plaintiffs argue that the RSL provides tenants a "local public assistance benefit" that should be paid for by the State as a whole, without imposing burdens on "a small set of New York City building owners." (Pl. Opp. at 43 (citing *In re Santiago-Monteverde*, 24 N.Y.3d 283, 289, 998 N.Y.S.2d 144 (2014).) Plaintiffs' argument is untenable, and misconstrues *Santiago-Monteverde*. That case arose out of a tenant's Chapter 7 bankruptcy proceeding. On certification from the Second Circuit, the Court of Appeals held that the tenant's rent-stabilized lease was a

---

contrary, the Supreme Court actually cited only a single concurrence in which one justice – not the Court as a whole – criticized *Salerno*. *See id.* (citing *Washington v. Glucksberg*, 521 U.S. 702, 739-740 & n. 7 (1997) (Stevens, J. concurring in the judgment)). Further, the justices unanimously "agree[d] that a facial challenge must fail where the statute has a plainly legitimate sweep." *Washington State Grange*, 552 U.S. at 449 (internal quotation marks and citation omitted).

public assistance benefit, and thus was exempt from the bankruptcy estate. *Id.* at 291. In reaching

that conclusion, the Court noted that under the Bankruptcy Code, "exemptions serve the

important purpose of protect[ing] the debtor's essential needs," including housing, and that

"exemption statutes are to be construed liberally in favor of debtors[.]" *Id.* at 292. The Court also

stated:

> Rent stabilization provides assistance to a specific segment of the
> population that could not afford to live in New York City without a
> rent regulatory scheme. And the regulatory framework provides
> benefits to a targeted group of tenants—it protects them from rent
> increases, requires owners to offer lease renewals and the right to
> continued occupancy, imposes strict eviction procedures, and grants
> succession rights for qualified family members.

*Id.* at 290.

Thus, the Court of Appeals recognized the vital importance of rent stabilization to

preserving affordable housing and protecting tenants, and sought to protect the debtor's home by

exempting her lease from the assets of the estate. By contrast, Plaintiffs invoke *Santiago-*

*Monteverde* for purposes that are diametrically opposed to its holding and underpinnings. They

would rely on that case to terminate the rent-stabilized leases of more than 1 million tenants and

their households – a result that the Court of Appeals did not contemplate and would not approve.

Relatedly, Plaintiffs' reliance on *Murr v. Wisconsin*, 137 S. Ct. 1933, 1943 (2017), and

*Palazzolo v. Rhode Island*, 533 U.S. 606, 617-18 (2001), is also unavailing. (Pl. Opp. at 33.)

*Murr* and *Palazzolo* are distinguishable, as both involved as-applied rather than facial challenges

to local land use regulations. Moreover, the Supreme Court held that there was no regulatory

taking in *Murr*, and remanded *Palazzolo* for further consideration of the as-applied challenge in

light of the factors set forth in *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978).

As previously noted, applying the *Penn Central* factors is neither necessary nor feasible in the

context of a facial challenge. (*See* State Mem. at 15, n.8 (citation omitted).)[3]

Moreover, Plaintiffs' argument fails on its own terms. The RSL does not "single out" an individual or small class for disparate treatment, but merely regulates the economic relationship between a broad class of tenants and landlords, in a manner that the Courts have repeatedly approved. *See, e.g.*, *W. 95 Hous. Corp.*, 31 F. App'x at 21; *FHLMC*, 83 F.3d at 48; *RSA*, 5 F.3d at 595. In *Penn Central*, the Supreme Court distinguished land-use decisions that "arbitrarily single[] out a particular parcel for different, less favorable treatment than the neighboring ones" from permissible "land-use control as part of some comprehensive plan[.]" *Penn Cent. Transp. Co.*, 438 U.S. at 132. Plaintiffs do not allege and cannot show that they are being unfairly targeted. The RSL applies to a broad classification of apartments for economic regulation in the public interest; it does not "single out" any owners.

In sum, the RSL does not deprive Plaintiffs of all economically viable use of their property, nor does it single them out for less favorable treatment than other similarly situated property owners. For these reasons and the others set forth in the State's opening memorandum, Plaintiffs' facial regulatory taking claim should be dismissed.

## III.    PLAINTIFFS' DUE PROCESS CLAIM FAILS AS A MATTER OF LAW

### A.    Plaintiffs' Due Process Claim Is Barred Under Applicable Case Law

As a threshold matter, Plaintiffs cannot maintain a substantive due process claim that arises out of the same allegations as their claims under the Takings Clause. *See Harmon*, 412 F. App'x at 423. In *Harmon*, the Second Circuit analyzed (and rejected) the property owners' Takings Clause challenge to the RSL on its merits, and summarily rejected the owners' due process claim "as a matter of law." *Id.* "[T]he Due Process Clause cannot 'do the work of

---

[3] In their regulatory taking argument and elsewhere, Plaintiffs rely on the dissenting opinions of one or two Supreme Court justices, which of course are not the law. (Pl. Opp. at 6, 11 n.4, 34, 37, 38, 44, 47.)

the Takings Clause' because '[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims[.]'" *Id.* (quoting *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envt'l Prot.,* 560 U.S. 702, 721 (2010) (internal quotation marks and citation omitted). *Accord Wellswood Columbia, LLC v. Town of Hebron*, No. 3:10 Civ. 1467 (VLB), 2013 WL 356619, at *4 (D. Conn. Jan. 29, 2013) (dismissing substantive due process claim as duplicative of Takings Clause claim), *on reconsideration in part*, 2013 WL 5435532 (Sept. 30, 2013).

Here, Plaintiffs purport to assert a substantive due process claim, notwithstanding the Takings Clause's "explicit textual source of constitutional protection" against the same alleged governmental action. Thus, *Harmon* mandates the summary dismissal of the due process claim.

### B.   The RSL Is Subject To Rational Basis Review

Plaintiffs argue that the Court, in evaluating their substantive due process claim, should subject the RSL to "strict scrutiny" because property rights are "fundamental." (Pl. Opp. at 6, 16-17; *see also* NAHB Br. at 5, n.5.) Plaintiffs cite no pertinent authority in support of this baseless argument. One district court case cited by Plaintiffs did not involve rent control, or any property rights, but an inmate's "fundamental liberty interest" in freedom of association. *See id*. (citing *Doe v. Lima*, 270 F. Supp. 3d 684, 702 (S.D.N.Y. 2017), *aff'd*, 758 F. App'x 181 (2d Cir. 2019)). The only other case cited by Plaintiffs on this point involved (and rejected) a challenge to a state penal law prohibiting assisted suicide as an alleged violation of the fundamental liberty interests secured by the Due Process Clause. (Pl. Opp. at 16 (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). The application of "strict scrutiny" to governmental action affecting those fundamental liberty interests has no bearing on Plaintiffs' claim asserting a violation of the

property component of the Due Process Clause.[4]

Contrary to Plaintiffs' "strict scrutiny" argument, "[e]conomic and social welfare legislation is consistent with the requirements of due process if it is rationally related to a legitimate governmental objective." *Kaufman v. City of N.Y.*, 717 F. Supp. 84, 88 (S.D.N.Y. 1989) (citing *Village of Belle Terre v. Boraas,* 416 U.S. 1, 8 (1974)), *aff'd*, 891 F.2d 446 (2d Cir. 1989). Further, it is well-settled that "legislative Acts adjusting the burdens and benefits of economic life [enjoy] a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Id.* (quoting *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15-16 (1976)).

Applying this "well-established" principle, the Supreme Court rejected a due process challenge to the residential rent control ordinance in *Pennell v. City of San Jose*, 485 U.S. 1, 11 (1988), which permitted rent regulators to consider the hardship that a rent increase would impose on each tenant. In doing so, the Supreme Court reaffirmed that "a legitimate and rational goal of price or rate regulation is the protection of consumer welfare. … Indeed, a primary purpose of rent control is the protection of tenants." *Id.* at 13. Numerous cases have reaffirmed that rent controls and land use regulations are "economic enactments" subject to "highly deferential" rational basis review. *Gilbert v. City of Cambridge*, 745 F. Supp. 42, 51 (D. Mass. 1990), *aff'd*, 932 F.2d 51 (1st Cir. 1991). *See also San Francisco Apartment Ass'n v. City & Cnty. of San Francisco*, 881 F.3d 1169, 1179 & n.7 (9th Cir. 2018); *Kaufman*, 717 F. Supp. at 88.

Under the rational basis standard, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state

---

[4] Plaintiffs cite no authority establishing that property rights are "fundamental" for purposes of triggering heightened scrutiny. Even if property rights were deemed "fundamental" in a broad sense, Plaintiffs do not assert (and the law does not establish) that landlords have a fundamental Constitutional right to charge the maximum rents that the market will bear, free of state regulation.

interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)). Thus, "[t]he policy need not be the most narrowly tailored means of advancing" the legislature's goals. *Perez v. Zenk*, No. 04 Civ. 5069 (CBA), 2005 WL 990696, at *4 (E.D.N.Y. Apr. 11, 2005) (citing *Reno v. Flores,* 507 U.S. 292, 305 (1993)). "Rather, rational basis review 'demands no more than a 'reasonable fit' between governmental purpose ... and the means chosen to advance that purpose.'" *Id.* (quoting *Reno*, 507 U.S. at 305). Consequently, Plaintiffs' repeated assertions that the RSL is not "narrowly tailored" are inapposite. (*See, e.g.*, Pl. Opp. at 7, 11, 16.)

## C.    The RSL Is Rationally Related To Legitimate State Policy Goals

Plaintiffs do not dispute that the purposes of the RSL are valid. As the Supreme Court has held, the legislative goal of "preventing excessive and unreasonable rent increases caused by the growing shortage of and increasing demand for housing … is a legitimate exercise of [the State's] police powers." *Pennell*, 485 U.S. at 11. *See also CCA Assocs. v. United States*, 667 F.3d 1239 (Fed. Cir. 2011); *Greystone Hotel Co.*, 13 F. Supp. 2d at 528 (affirming New York's "legitimate state interest" in "coping with an acute shortage of available housing, and preventing unjust and oppressive rents and profiteering"); *Manocherian v. Lenox Hill Hosp.*, 84 N.Y.S.2d 385, 395 (1994) ("The central, underlying purpose of the RSL is to ameliorate the dislocations and risk of widespread lack of suitable dwelling.").

Instead, Plaintiffs contend the RSL is an irrational means of achieving the State's legitimate ends. But their argument is unsupported by any case law. Plaintiffs rely on contested social science and economic analysis of the sort best suited to legislative, not judicial, consideration. (Compl. ¶¶ 88-100, 118-130, 142-154; NAHB Br., *passim*.) Moreover, as demonstrated below, Plaintiffs' reasoning is fatally flawed. Accordingly, Plaintiffs cannot state a claim that the RSL is "arbitrary, discriminatory, or demonstrably irrelevant" to the State's policy

goals. *Pennell*, 485 U.S. at 11.

**1.     Plaintiffs Cite No Case Law Supporting Their Due Process Claim**

In her moving brief, Commissioner Visnauskas cited cases that specifically rejected due process challenges to the RSL on the ground that there is "a close causal nexus between the challenged [rent] regulations and the stated purpose of preventing the eviction and resulting vulnerability to homelessness of the identified beneficiaries[.]" *Higgins*, 83 N.Y.2d at 174. *See also Greystone Hotel Co.*, 13 F. Supp. 2d at 528. (State Mem. at 26.) In opposition, Plaintiffs cite no contrary authorities. (Pl. Opp. at 6-18.) Thus, their due process claim should be dismissed as contrary to precedent.

**2.     Plaintiffs Urge This Court To Act As A Super-Legislature**

Unable to cite any case law supporting their due process claim, Plaintiffs submit a "Brandeis Brief" that cites purported social and economic data to illustrate the alleged evils of rent stabilization.[5] (Pl. Opp. at 11-17.) In addition, the amicus briefs submitted by NAHB and REBNY are peppered with citations to purported academic studies and newspaper stories regarding the housing market. (*See* NAHB Br. at ii-iv (citing no fewer than 26 "secondary sources"); REBNY Br. at ii-iii (citing, *inter alia*, articles published in The New York Times and The Wall Street Journal).) But the data cited by Plaintiffs and amici are, at best, contested assertions of the sort best suited to legislative, rather than judicial, consideration.

The legislative history of the 2019 amendments to the RSL shows that at several public hearings, representatives of the real estate industry forcefully articulated the same concerns that they assert in this action. For example, Joseph Strasburg, President of Plaintiff Rent Stabilization

---

[5] "[T]he 'Brandeis Brief' is a well-known technique for asking the court to take judicial notice of social facts." *Knight v. Dugger*, 863 F.2d 705, 742 (11th Cir. 1988) (citation omitted).

Association of N.Y.C., Inc., criticized the proposed amendments, claiming an alternative approach would more effectively assist low-income tenants. *See* New York State Assembly, Standing Committee on Housing, Transcript of Public Hearing at 211-213 (May 2, 2019). At the same hearing, Paimaan Lodhi, Senior Vice President of *amicus curiae* REBNY, claimed the proposed amendments would "eliminate necessary streams of revenue," resulting in dire consequences for New York's housing stock. *See id.* at 215.

After considering these statements, the testimony of tenant advocates and other stake-holders, and additional evidence, the Legislature adopted the 2019 Amendments by votes of 36-26 in the Senate and 95-41 in the Assembly. The fact that the Legislature overwhelmingly adopted the 2019 Amendments to the RSL suggests that Plaintiffs' arguments, evidence, or both were found wanting. It is not the role of the courts to second-guess that policy judgment.

"[I]t is, by now, absolutely clear that the Due Process Clause does not empower the judiciary 'to sit as a 'superlegislature to weigh the wisdom of legislation.'" *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 124 (1978) (quoting *Ferguson v. Skrupa*, 372 U.S. 726, 731 (1963) (internal citation omitted)). "The court's duty to determine whether the defendants have offered a rational basis for [the State's actions] is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Zeigler v. Town of Kent*, 258 F. Supp. 2d 49, 58-59 (D. Conn. 2003) (citations omitted). "Nor does it authorize the judiciary [to] sit as a super-legislature to judge the wisdom or desirability of legislative policy determination made in areas that neither affect fundamental rights nor proceed along suspect lines. Accordingly, we are to afford governmental decisions a strong presumption of validity[.]" *Id.* (citations omitted).

Plaintiffs' attempt to assert a substantive due process claim violates these principles. Each of their arguments that the RSL is ineffective as an empirical matter invites the Court to

substitute its judgment of the pertinent social science and economics for that of the Legislature.

Moreover, many of the studies cited by Plaintiffs and *amici* are irrelevant to this case.

Plaintiffs and *amici* cite numerous studies that analyze outmoded rent control regimes, rather

than New York State's more flexible and nuanced system of rent stabilization. *See, e.g.*, Compl.

¶ 91 (citing studies of rent controls in Massachusetts and Washington, D.C.); NAHB Br., *passim*

(relying on numerous rent control studies). As such, Plaintiffs and *amici* attack the effectiveness

of the RSL based on research concerning different and distinguishable rules. *See, e.g.,*

https://www.urban.org/sites/default/files/publication/99646/rent_control._what_does_the_researc

h_tell_us_about_the_effectiveness_of_local_action_1.pdf (last accessed Jan. 23, 2020).

Moreover, numerous studies and reports, whose findings were summarized at the

Legislature's hearings on the 2019 Amendments, demonstrate that Plaintiffs' claims are the

subject of robust scholarly dispute. For example, one cited study showed that vacancy bonuses,

vacancy decontrol, MCIs, IAIs, and preferential rents operated as loopholes that enabled owners

to force out low-income tenants and undermined neighborhood stability. *See* New York State

Assembly, Standing Committee on Housing, Transcript of Public Hearing at 1821-1823 (May 2,

2019) (Statement of Oksana Mironova) (citing report by Community Service Society of New

York). *See also id*. at 770-772, 1866 (Statement of Chris Widelo) (citing study by Center for

Urban Future and urging Legislature to eliminate vacancy decontrol and increases in preferential

rents); *id.* at 672 (Statement of Assembly Member Diana Richardson) (citing report by

Association of Neighborhood and Housing Development and Housing Rights Initiative, which

established that IAIs resulted in average rent increases of 107%).

However, the Court need not (and should not) resolve that dispute on this motion. It is

sufficient to note that whether the RSL efficiently achieves its policy goals is a quintessentially

legislative determination. As the Supreme Court has held:

> States are accorded wide latitude in the regulation of their local economies under the police powers, and rational distinctions may be made with substantially less than mathematical exactitude. . . . In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines[.]

*City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976), *quoted in Civil Serv. Employees Ass'n v. Helsby*, 439 F. Supp. 1272, 1279 (S.D.N.Y. 1977).

Having failed to persuade the Legislature of their interpretation in 2019, Plaintiffs cannot use the Due Process Clause to reach a contrary result.

### 3.    Plaintiffs' Arguments Defy Logic

Plaintiffs' argument that the RSL is an irrational means to achieve the State's policy goals is internally inconsistent and illogical.

For example, Plaintiffs argue that rent stabilization does not promote the neighborhood stability desired by the Legislature. (Pl. Opp. at 14.) That assertion is belied by the Complaint, which alleges that the RSL "incentivizes tenants to stay in units longer," resulting in "reduced turn-over" of apartments. (Compl. ¶ 117.) That allegation, accepted as true, necessarily means the RSL fosters neighborhood stability, as the Legislature intended.

Plaintiffs also assert that the percentage of low-income households in rent-stabilized and unregulated apartments is "about the same." (Pl. Opp. at 13.) But that contention is contradicted by Plaintiffs' own statistics, which confirm the percentage of low-income households living in rent-stabilized housing is significantly higher. (*Id.*) Thus, Plaintiffs have failed to plausibly allege that rent stabilization is an irrational and arbitrary means of protecting low-income households from unpredictable and extreme rent increases.

17

Even more incongruously, Plaintiffs argue that the RSL "deters development" of new housing. (Pl. Opp. at 7.) That makes no sense, since (as Plaintiffs concede) rent stabilization is limited to "buildings in New York City built prior to 1974 that contain six or more units." (*Id.* at 3.) Plaintiffs cannot plausibly claim that the RSL discourages construction of new buildings, which would not be subject to the law's restraints.

Plaintiffs' overarching argument is perhaps their most misguided of all. Fundamentally, Plaintiffs argue that New York's system of rent stabilization is irrational because, after fifty years of rent stabilization, the legislatively declared "housing emergency" persists in New York City. (Pl. Opp. at 1.) Plaintiffs fail to consider that the RSL has mitigated the high cost of housing and prevented unpredictable rent increases for millions of tenants and their families. Nor have Plaintiffs considered how much worse the housing crisis would be if not for rent stabilization. As Justice Ruth Bader Ginsburg noted in a different context, "Throwing out [a statute] when it has worked and is continuing to work … is like throwing away your umbrella in a rainstorm because you are not getting wet." *Shelby Cnty., Ala. v. Holder*, 570 U.S. 529, 590 (2013) (Ginsburg, J., dissenting).

## CONCLUSION

For the foregoing reasons and those set forth in her opening memorandum of law, the Court should dismiss this action as against Commissioner Visnauskas in its entirety, with prejudice, and should grant such other and further relief as the Court deems proper.

Dated: New York, New York           LETITIA JAMES
       February 7, 2020             Attorney General
                                    State of New York
                                    *Attorney for Commissioner Visnauskas*


                                    By: _____/s/_____
                                        Michael A. Berg
                                        Assistant Attorneys General
                                        28 Liberty Street
                                        New York, New York 10005
                                        (212) 416-8651
                                        michael.berg@ag.ny.gov

19