UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

COMMUNITY HOUSING IMPROVEMENT PROGRAM,
RENT STABILIZATION ASSOCIATION OF N.Y.C., INC.,
CONSTANCE NUGENT-MILLER, MYCAK ASSOCIATES
LLC, VERMYCK LLC, M&G MYCAK LLC, CINDY
REALTY LLC, DANIELLE REALTY LLC, FOREST
REALTY, LLC,

                  Plaintiffs,

            v.

CITY OF NEW YORK, RENT GUIDELINES BOARD,
DAVID REISS, CECILIA JOZA, ALEX SCHWARZ,
GERMAN TEJEDA, MAY YU, PATTI STONE, J. SCOTT
WALSH, LEAH GOODRIDGE, AND SHEILA GARCIA, IN
THEIR OFFICIAL CAPACITIES AS CHAIR AND
MEMBERS, RESPECTIVELY, OF THE RENT GUIDELINES
BOARD, AND RUTHANNE VISNAUSKAS, IN HER
OFFICIAL CAPACITY AS COMMISSIONER OF NEW
YORK STATE HOMES AND COMMUNITY RENEWAL,
DIVISION OF HOUSING AND COMMUNITY RENEWAL,

                  Defendants.

Case No. 19-cv-4087 (EK)
(RLM)

## INTERVENOR DEFENDANTS' SUPPLEMENTAL BRIEF
## IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

Date: July 17, 2020

Sean Baldwin
Caitlin Halligan
Michael Duke
SELENDY & GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000
sbaldwin@selendygay.com
challigan@selendygay.com
mduke@selendygay.com

Edward Josephson
Pavita Krishnaswamy
Directors of Litigation
Legal Services NYC

105 Court Street, 4th floor
Brooklyn, NY 11201
(718) 237-5538
ejosephson@lsnyc.org
pkrishnaswamy@lsnyc.org

Judith Goldiner
Attorney in Charge
Civil Law Reform Unit
Ellen Davidson, of counsel
The Legal Aid Society
199 Water St., 3rd Floor
New York, N.Y. 10038
(212) 577-3332
JGoldiner@legal-aid.org

*Attorneys for Intervenor Defendants N.Y.
Tenants & Neighbors, Community Voices
Heard, and Coalition for the Homeless*

# TABLE OF CONTENTS

**Pages**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ................................................................................................................1

I.     Plaintiffs Have Not Come Close to the Showing Necessary for a District Court to Disregard On-Point Second Circuit Authority.....................................................1

II.    Post-Eviction Remedies Do Not Effect a Taking or Violate Due Process ..........5

      A.      The RPAPL Amendments Do Not Effect a Physical Taking .................7

      B.      The RPAPL Amendments Do Not Effect a Regulatory Taking .............8

III.    The Relevant Parcel Is Each Entire Building ...................................................10

IV.    Plaintiffs' Due Process Claim Fails Because the RSL Is Rationally Related to the Conceivable Government Interest of Protecting Neighborhood Stability, Among Others...............................................................................................................15

CONCLUSION...........................................................................................................16

# TABLE OF AUTHORITIES

## Cases

*2910 Georgia Ave. LLC v. D.C.*,
 234 F. Supp. 3d 281 (D.D.C. 2017) ........................................................ 12, 13

*Am. Sav. & Loan Ass'n v. Marin County*,
 653 F.2d 364 (9th Cir. 1981) ..................................................................... 14

*Beatie v. City of New York*,
 123 F.3d 707 (2d Cir. 1997) ....................................................................... 16

*Bridge Aina Le'a, LLC v. Hawaii Land Use Comm'n*,
 No. 11 Civ. 414, 2018 WL 3149489 (D. Haw. June 27, 2018), *rev'd*, 950 F.3d 610
 (9th Cir. 2020) ........................................................................................... 14

*Chesterfield Dev. Corp. v. City of Chesterfield*,
 963 F.2d 1102 (8th Cir. 1992) ................................................................... 15

*City of Los Angeles v. Patel*,
 576 U.S. 409 (2015) ..................................................................................... 5

*Conn. Fine Wine & Spirits, LLC v. Seagull*,
 932 F.3d 22 (2d Cir. 2019), *cert. denied*, 206 L. Ed. 2d 713 (Apr. 6, 2020) ..................... 2

*E. & A. Realty Corp. v. Coulter*,
 8 N.Y.S.2d 811 (Mun. Ct. 1938) ................................................................. 9

*Elmsford Apartment Assocs., LLC v. Cuomo*,
 No. 20 Civ.4062 (CM), 2020 WL 3498456 (S.D.N.Y. June 29, 2020) ................... 4, 9, 11

*Engquist v. Ore. Dep't of Agr.*,
 553 U.S. 591 (2008) ................................................................................... 16

*FCC v. Beach Commc'ns, Inc.*,
 508 U.S. 307 (1993) ................................................................................... 16

*Fed. Home Loan Mortgage Corp. v. New York State Division of Housing & Community
 Renewal*,
 83 F.3d 45 (2d Cir. 1996) ..................................................................... 2, 3, 4, 5

*Gordon v. 476 Broadway Realty Corp.*,
 12 N.Y.S.3d 37 (1st Dep't 2015) ................................................................. 7

*Greystone Hotel Co. v. City of New York*,
    1999 U.S. App. LEXIS 14960 (2d Cir. 1999) ............................................................. 11

*Harmon v. Markus*,
    412 F. App'x 420 (2d. Cir. 2011) ................................................................ 2, 3, 4

*Hodel v. Va. Surface Min. & Reclamation Ass'n, Inc.*,
    452 U.S. 264 (1981) ................................................................................................. 8

*Horne v. Department of Agriculture*,
    576 U.S. 350 (2015) ........................................................................................ 1, 2, 3, 4

*Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev.*,
    959 F.2d 395 (2d Cir. 1992) .................................................................................. 9, 13

*Lightfoot v. Union Carbide Corp.*,
    175 F.3d 1008 (2d Cir. 1999) ................................................................................... 2

*Lingle v. Chevron U.S.A. Inc.*,
    544 U.S. 528 (2005) ............................................................................................ 4, 10

*Loretto v. Teleprompter Manhattan CATV Corp.*,
    458 U.S. 419 (1982) ................................................................................................. 3

*Lost Tree Vill. Corp. v. United States*,
    707 F.3d 1286 (Fed. Cir. 2013) ............................................................................... 14

*Loveladies Harbor, Inc. v. United States*,
    28 F.3d 1171 (Fed. Cir. 1994) ................................................................................. 14

*Monsanto v. United States*,
    348 F.3d 345 (2d Cir. 2003) ..................................................................................... 2

*Murr v. Wisconsin*,
    137 S. Ct. 1933 (2017) ............................................................................ 11, 12, 13, 14

*N.Y. Univ. v. Arnold*,
    508 N.Y.S.2d 869 (Civ. Ct. 1986) ............................................................................ 7

*Nordlinger v. Hahn*,
    505 U.S. 1 (1992) .............................................................................................. 1, 15

*Park Ave. Tower Assocs. v. City of New York*,
    746 F.2d 135 (2d Cir. 1984) ..................................................................................... 9

*Penn Cent. Transp. Co. v. City of New York*,
    438 U.S. 104 (1978) ..................................................................................... 4, 5, 8, 10

*Pennell v. City of San Jose,*
    485 U.S. 1 (1988) ............................................................. 6, 9, 10

*Preseault v. I.C.C.,*
    494 U.S. 1 (1990) ............................................................. 10, 15

*Regina Metro. Co. v. N.Y.S. Div. of Hous. & Cmty. Renewal,*
    No. 1, 2020 WL 1557900 (N.Y. Apr. 2, 2020) ......................... 9, 13

*Rent Stabilization Ass'n of N.Y.C. v. Dinkins,*
    5 F.3d 591 (2d Cir. 1993) ...................................................... 8

*Sartori v. United States,*
    67 Fed. Cl. 263, 265 (2005) .................................................. 14

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,*
    535 U.S. 302 (2002) ...................................................... 10, 12, 14

*Totaram v. Cordero,*
    No. 32966/02, 2003 WL 1904081 (N.Y. Civ. Ct. Mar. 31, 2003) ........ 7

*United States v. Dupree,*
    No. 16 Cr. 84 (ARR), 2016 WL 10703796 (E.D.N.Y. Aug. 26, 2016) ........ 2

*United States v. Emmenegger,*
    329 F. Supp. 2d 416 (S.D.N.Y. 2004)), *aff'd*, 767 F. App'x 181 (2d Cir. 2019) .......... 2, 4

*United States v. Moreno,*
    No. 94-cr-165, 2000 WL 1843232 (S.D.N.Y. Dec. 14, 2000) ......... 4

*United States v. Payne,*
    591 F.3d 46 (2d Cir. 2010) ..................................................... 2

*United States v. Tejeda,*
    824 F. Supp. 2d 473 (S.D.N.Y. 2010) .................................... 2

*United States v. Wong,*
    40 F.3d 1347 (2d Cir. 1994) ................................................. 2

*W. 95 Hous. Corp. v. N.Y.C. Dep't of Hous. Pres. & Dev.,*
    31 F. App'x 19 (2d Cir. 2002) ............................................. 8, 12

*Wash. State Grange v. Wash. State Repub. Party,*
    552 U.S. 442 (2008) ............................................................ 5, 8

*Yee v. City of Escondido,*
    503 U.S. 519 (1992) ......................................................... 3, 4, 7

**Statutes**

RPAPL § 745 ................................................................................................................... 6, 8

RPAPL § 749 ................................................................................................................... 6, 9

RPAPL § 753 ............................................................................................................ 6, 7, 8, 9

**Other Authorities**

*Definitions of Property Assessment Terms*, N.Y.C. Dep't of Finance,
    https://on.nyc.gov/2AU0t3o (last visited July 11, 2020) ................................................. 12

L. 1962, c. 312, § 21 ........................................................................................................... 9

N.Y. Real Prop. Tax Law § 102 ........................................................................................ 12

N.Y. Real Prop. Tax Law § 1802 ...................................................................................... 12

N.Y.C. Admin. Code § 27-2004 ........................................................................................ 12

S6458, Bill Justification Part M, https://www.nysenate.gov/legislation/bills/2019/s6458 ............ 6

Zoning Resolution § 22-00 ................................................................................................ 12

## PRELIMINARY STATEMENT

Intervenor Defendants respectfully submit this supplemental brief to address the issues raised by the Court during the June 23, 2020 oral arguments on Defendants' motions to dismiss in *CHIP v. City of New York*, No. 19 Civ. 4087, and *74 Pinehurst LLC v. State of New York*, No. 19 Civ. 6447.[1]  In both cases, the Court directed the parties to brief two questions: (1) whether the Second Circuit's prior holdings that the RSL does not effect a physical taking are still good law in light of *Horne v. Department of Agriculture*, 576 U.S. 350 (2015), as well as whether this Court is bound to follow those decisions, and (2) whether the RSL's post-breach remedy of a stay of eviction is constitutional.[2]  In *74 Pinehurst*, the Court ordered briefing on two additional questions: (3) whether the relevant parcel for regulatory-taking analysis is the building, not each regulated apartment unit, and (4) whether the legitimate government interest in neighborhood stability recognized by *Nordlinger v. Hahn*, 505 U.S. 1 (1992), undermines Plaintiffs' due-process claim.[3]  The answer to all four questions is yes, and both complaints should be dismissed.

## ARGUMENT

### I.    Plaintiffs Have Not Come Close to the Showing Necessary for a District Court to Disregard On-Point Second Circuit Authority

This Court is bound by the Second Circuit precedent upholding the RSL.  A decision by a circuit panel, even if it is in "tension" with Supreme Court authority, binds future panels and district courts "unless and until that case is reconsidered by [the circuit] sitting in banc (or its equivalent) or is rejected by a later Supreme Court decision."  *Monsanto v. United States*, 348 F.3d 345,

---

[1] *See* June 23, 2020 Minute Entries, *CHIP* ECF No. 85, *74 Pinehurst* ECF No. 62.  Intervenor Defendants are filing identical supplemental briefs in both cases.

[2] *See CHIP* Tr. 75–76, ECF No. 86; *74 Pinehurst* Tr. 79–82, ECF No. 64.  The *74 Pinehurst* Plaintiffs are working to obtain a corrected transcript.  *74 Pinehurst* Supp. Br. at 1 n.1.

[3] *See 74 Pinehurst* Tr. 79–82.

351 (2d Cir. 2003).[4]  A district court is "obliged to follow [Second Circuit] precedent, even if that precedent might be overturned in the near future," *United States v. Wong*, 40 F.3d 1347, 1373 (2d Cir. 1994), "unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit *United States v. Dupree*, No. 16 Cr. 84 (ARR), 2016 WL 10703796, at *4 (E.D.N.Y. Aug. 26, 2016) (quoting *United States v. Emmenegger*, 329 F. Supp. 2d 416, 429 (S.D.N.Y. 2004)), *aff'd*, 767 F. App'x 181 (2d Cir. 2019).  Neither the *CHIP* nor *74 Pinehurst* Plaintiffs have come close to making such a showing.

Plaintiffs argue that *Horne* implicitly overruled *Federal Home Loan Mortgage Corp. v. New York State Division of Housing & Community Renewal* ("*FHL*"), 83 F.3d 45 (2d Cir. 1996), and *Harmon v. Markus*, 412 F. App'x 420 (2d. Cir. 2011),[5] because *Horne* held that the government could not avoid a "clear physical taking" of part of plaintiffs' raisin crop on the basis that the plaintiff "raisin growers voluntarily [chose] to participate in the raisin market."  *Horne*, 576 U.S. at 361, 365.  Plaintiffs assert that *FHL* and *Harmon*, by holding that the RSL did not impose a physical taking because, among other things, the plaintiffs acquiesced to the use of their property as rental housing, are inconsistent with this principle.  Plaintiffs are wrong.

---

[4] *Accord Conn. Fine Wine & Spirits, LLC v. Seagull*, 932 F.3d 22, 39 (2d Cir. 2019), *cert. denied*, 206 L. Ed. 2d 713 (Apr. 6, 2020); *Lightfoot v. Union Carbide Corp.*, 175 F.3d 1008 (2d Cir. 1999).

[5] Plaintiffs are wrong to suggest that this Court may disregard *Harmon* and other summary orders. *CHIP* Supp. Br. at 5 n.2; *74 Pinehurst* Supp. Br. at 13 & n.15.  Courts have repeatedly rejected the suggestion that they are "at liberty not only to disregard but contradict a Second Circuit ruling squarely on point merely because it was rendered in a summary order."  *United States v. Tejeda*, 824 F. Supp. 2d 473, 475 (S.D.N.Y. 2010); *see also id.* ("It would demand an expression of utmost temerity, if not robust arrogance, for a district court to flout germane guidance of a Circuit Court panel and to substitute its own conclusion of law[.]"); *United States v. Payne*, 591 F.3d 46, 58 (2d Cir. 2010) ("[D]enying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases." (quoting order adopting Local Rule 32.1)).

"The government effects a physical taking only where it *requires* the landowner to submit to the physical occupation of his land." *Yee v. City of Escondido*, 503 U.S. 519, 527 (1992). As a result, when landlords acquiesce to physical occupation by "voluntarily rent[ing]" their buildings, tenants are "not forced upon them by the government," and there is no taking. *Id.* at 527–28. *FHL* and *Harmon* involved a straightforward application of this principle. Because the plaintiffs in both cases "acquiesced in [their buildings'] continued use as rental housing," *Harmon*, 412 F. App'x at 422 (quoting *FHL*, 83 F.3d at 48), "there ha[d] simply been no *compelled* physical occupation" and, thus, no physical taking, *Yee*, 503 U.S. at 532 (emphasis added).

Indeed, *Yee* rejected the exact same argument that Plaintiffs make here. The petitioners in *Yee*—relying on the exact same footnote from *Loretto* that *Horne* applied, *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 439 n.17 (1982)—argued that "if they have to leave the mobile home park business in order to avoid the strictures of the [rent control] ordinance, their ability to rent their property has in fact been conditioned on … a forfeiture," *Yee*, 503 U.S. at 531–32. The *Yee* Court held that this "argument fails at its base, however, because there has simply been no compelled physical occupation giving rise to a right to compensation that petitioners could have forfeited." *Id.* at 532. That was also true in *FHL* and *Harmon*, as it is here.

For this same reason, the *74 Pinehurst* Plaintiffs are wrong that even if landlords can stop being landlords by "chang[ing] the use of their property," there still may be a physical taking. *74 Pinehurst* Supp. Br. at 12. Plaintiffs' current use—voluntarily renting their properties to tenants— is not a physical taking. *Yee*, 503 U.S. at 527–28. Thus, if Plaintiffs' do not want to change their current use—that is, if they do not want to stop voluntarily renting their properties to tenants— then there undoubtedly is no taking. *Yee* confirms this self-evident point. There, the Supreme

Court held there was no physical taking where the landlord's *only* basis to remove a tenant (other than for nonpayment of rent) was "to change the use of his land."  503 U.S. at 528.

Even if *Horne* were at odds with *Harmon* and *FHL*, this Court would nonetheless remain bound because it is not "all but certain" that the Second Circuit will overrule those precedents. *Emmenegger*, 329 F. Supp. 2d at 429.  "[I]t would be bold indeed for a district court simply to declare itself free of binding authority[,] … particularly where not a single constitutional challenge to that scheme has ever been sustained." *Id.* at 430.  Plaintiffs do not point to a single case even suggesting that *Horne* overruled *FHL* or *Harmon*.  To the contrary, another court, relying on *Harmon* and *FHL*, recently rejected the argument that New York's eviction moratorium was a physical taking.  *See Elmsford Apartment Assocs., LLC v. Cuomo*, No. 20 Civ. 4062 (CM), 2020 WL 3498456, at *7–8 (S.D.N.Y. June 29, 2020).[6]

The *CHIP* Plaintiffs' suggestion that *FHL* was overruled by *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005), is similarly unavailing.  *See CHIP* Supp. Br. at 7.  *Lingle* held that "the 'substantially advances' formula is not a valid takings test," and the Court made clear its opinion did not "disturb any of [the Court's] prior holdings."  544 U.S. at 545.  Plaintiffs also mischaracterize *FHL* as "appl[ying] an erroneous legal standard" requiring complete deprivation of "all economically viable use" of property, rather than applying the *Penn Central* factors.  *CHIP* Supp. Br. at 7.  *FHL* did not turn on a complete deprivation of *"all* economically beneficial" use, which would effect a *per se* taking.  *Lingle*, 544 U.S. at 538.  Rather, *FHL* held that the landlord's claim

---

[6] This is in stark contrast to *United States v. Moreno*, No. 94 Cr. 165, 2000 WL 1843232 (S.D.N.Y. Dec. 14, 2000) (Sotomayor, J.), upon which Plaintiffs rely.  *See CHIP* Supp. Br. at 3–4; *74 Pinehurst* Supp. Br. at 11 n.13.  The *Moreno* court found Second Circuit precedent to be abrogated only because five other circuit courts had already overruled their corresponding prior decisions in light of the intervening Supreme Court ruling, and the Second Circuit simply had not had the opportunity to revisit the issue.  *Moreno*, 2000 WL 1843232, at *5.

failed because it could not establish the first *Penn Central* factor—although the landlord would "not profit as much as it would under a market-based system, it may still rent apartments and collect the regulated rents." 83 F.3d at 48.

The *CHIP* Plaintiffs' additional argument that *City of Los Angeles v. Patel*, 576 U.S. 409 (2015), "made clear that facial challenges are available for all constitutional claims," *CHIP* Supp. Br. at 8, misses the mark. Intervenor Defendants do not suggest that facial taking claims are categorically barred—only that the fact-intensive inquiry necessary in this case to apply the *Penn Central* factors to a complex rent-regulation regime like the RSL, affecting millions of units, is not suitable for a facial challenge. *Patel*'s reminder that a court must consider "applications of the statute in which it actually authorizes or prohibits conduct" does not change the fact that Plaintiffs here cannot establish that the RSL is unconstitutional in "all of its applications." 576 U.S. at 418 (quoting *Wash. State Grange v. Wash. State Repub. Party*, 552 U.S. 442, 449 (2008) ). Because the impact of the RSL varies widely even for those landlords for "whom the law is a restriction," *CHIP* Supp. Br. at 8, a facial claim is inappropriate, *see CHIP* Intervenors' Mem. at 16, ECF No. 76-1 ("[T]he extent to which these amendments affected expectations for any individual unit varies widely. The impact of eliminating vacancy increases, preferential rent increases, high-income decontrol provisions, and increases for IAIs differs by unit depending on how preferential the rent is, how likely the unit is to become vacant, and how much improvement it needs.").

## II. Post-Eviction Remedies Do Not Effect a Taking or Violate Due Process

The 2019 amendments to the Real Property Actions and Proceedings Law ("RPAPL") do not effect a taking or violate due process.[7] No Plaintiff asserts that the law has ever been applied

---

[7] These RPAPL provisions apply statewide to market rate, as well as rent-stabilized, units. *See* Sponsor's Mem., Bill Jacket, L. 2019, ch. 36 ("As has been extensively documented, New York State ranks only 39th in the nation for tenant protections. For tenants who rent market-rate units,

to them, so Plaintiffs' challenge is purely facial. Plaintiffs' contention that the amendments effect a physical taking fails for the same reason as their challenge to the RSL—the RPAPL neither compels occupation nor permits an unwanted tenancy to continue in perpetuity. The RPAPL amendments do not effect a regulatory taking either, as the law has long required *at least* the contractually specified rent to be paid during the pendency of any stay of eviction. Nor do they violate due process, as the amendments are rationally related to numerous legitimate interests, including "reducing the costs of [tenant] dislocation." *Pennell v. City of San Jose*, 485 U.S. 1, 14 n.8 (1988).

Plaintiffs mischaracterize the RPAPL amendments in multiple ways. *First*, Plaintiffs state that the law permits "rent-free tenancies." *74 Pinehurst* Supp. Br. at 3; *accord CHIP* Supp. Br. at 11 & n.9. That is false. The amendments to Section 745 extend how long a landlord must wait to seek a preliminary order requiring a tenant to deposit rents due since service of eviction process and give the court discretion to determine the amount of such deposit. RPAPL § 745(2)(a). Section 749, as amended, requires a court to vacate a warrant of eviction for prior non-payment of rent *only* where the tenant (i) did not withhold rent in bad faith and (ii) tenders payment in full before the warrant is executed. *Id.* § 749(3). And Section 753 provides that a court may order a stay of eviction for no more than a year upon a showing of "extreme hardship" and "*only* upon the condition that the person against whom the judgment is entered shall make a deposit in court of the *entire* amount … for the occupation of the premises for the period of the stay." *Id.* § 753(1)–(2) (emphases added). The law thus does not give any tenant facing eviction a right to occupy any apartment without paying rent. *See Totaram v. Cordero*, No. 32966/02, 2003 WL 1904081, at *4

---

this legislation would … allow more leniency throughout any eviction proceeding, including stays of eviction and executions of warrants; and ensure that any eviction that is executed is done so in the interest of justice."), *available at* https://www.nysenate.gov/legislation/bills/2019/s6458.

(N.Y. Civ. Ct. Mar. 31, 2003) ("When § 753 is applicable, it appears … that the requirement of payment for use and occupation and overdue rent is mandatory.").

*Second*, Plaintiffs incorrectly claim that the requirements of Section 753(2) are illusory because there is "no enforcement mechanism." *74 Pinehurst* Supp. Br. at 3. But a court may grant a landlord relief if a tenant fails to comply with its order, and the stay is—by statute—*conditioned* on the deposit. *E.g.*, *N.Y. Univ. v. Arnold*, 508 N.Y.S.2d 869, 870 (Civ. Ct. 1986) (holding that upon failure to comply with the stay conditions, the landlord could, upon five days' notice, accelerate execution of the eviction warrant). *Finally*, Plaintiffs ignore that Section 753(3) prohibits a court from issuing a stay where the tenant's behavior is "objectionable." *Gordon v. 476 Broadway Realty Corp.*, 12 N.Y.S.3d 37, 39 (1st Dep't 2015).

## A.    The RPAPL Amendments Do Not Effect a Physical Taking

The challenged provisions of the RPAPL do not effect a physical taking because, among other things, they do not compel Plaintiffs or any other landlords to rent their properties. Plaintiffs invited physical occupation when they became landlords. *Yee*, 503 U.S. at 528. Their argument that the RPAPL deprives them of the ability to exclude tenants in breach of their leases fails. Plaintiffs do not allege that they intend to cease inviting any tenants to occupy their properties. At most, they want different tenants, but *Yee* made clear that there is no physical taking just because owners cannot "exclude particular individuals" in favor of others. *Id.* at 531. And, in any event, *Yee* also made clear that a twelve-month delay in eviction does not effect a physical taking even when a landlord no longer wants to be a landlord. *Id.* at 528 (holding that there was no physical taking where a landlord "who wishes to change the use of his land may evict his tenants, albeit with 6 or 12 months notice."). To the extent Plaintiffs' argument rests on the practical difficulty of evicting tenants after they breach their leases, the argument fails because Plaintiffs "do not claim to have run that gauntlet." *Id.* There is no physical taking.

**B.    The RPAPL Amendments Do Not Effect a Regulatory Taking or Violate Due Process**

Plaintiffs' challenge to the RPAPL amendments is solely facial because no Plaintiff alleges that any of their tenants have invoked the RPAPL against them.  A facial challenge fails for numerous reasons, including because Plaintiffs cannot show that "no set of circumstances exists under which" the provisions would be valid.  *Wash. State Grange*, 552 U.S. at 449.  The regulatory takings analysis "must be conducted with respect to specific property, and the particular estimates of economic impact and ultimate valuation relevant in the unique circumstances."  *Hodel v. Va. Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 295 (1981).  "Whether a taking has occurred depends … on a variety of financial and other information unique to each landlord."  *Rent Stabilization Ass'n of N.Y.C. v. Dinkins*, 5 F.3d 591, 597 (2d Cir. 1993); *accord W. 95 Hous. Corp. v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 31 F. App'x 19, 21 (2d Cir. 2002).  Application of the RPAPL provisions at issue would require a fact-specific analysis that balances the relative hardship between two parties,[8] which further confounds any facial challenge, and Plaintiffs—even with their fundamental misunderstanding of how the RPAPL provisions work—concede that economic "impact" depends on discretionary court decisions.  *74 Pinehurst* Supp. Br. at 4 (asserting harm only "so long as the court agrees" with the tenant").

Even if a facial challenge were proper, Plaintiffs fail to establish any of the *Penn Central* factors necessary to state a regulatory taking claim.  *First*, the RPAPL's economic impact cannot

---

[8] For all stays under Section 753, courts must first evaluate an applicant's extreme hardship based on individual-specific factors, including "serious ill health, significant exacerbation of an ongoing condition, a child's enrollment in a local school, and any other extenuating life circumstances affecting the ability of the applicant or the applicant's family to relocate and maintain quality of life."  RPAPL § 753(1).  Courts are then required to balance the applicant's hardship against "any substantial hardship the stay may impose on the landlord in determining whether to grant the stay or in setting the length or other terms of the stay."  *Id.*

equate to that of a government seizure. As noted above, Section 745(2)(a) permits, but does not require, courts to deny a landlord's motion to compel the tenant to deposit outstanding rent *pending trial*, and Sections 749(3) and 753(2) permit relief to tenants only on deposit of the full rent due. In any event, "even if an unspecified number of tenants are behind in their rental payments, that is not enough for Plaintiffs to prevail on a facial challenge … under the Takings Clause." *Elmsford*, 2020 WL 3498456, at *10. And "the inability of [owners] to receive a reasonable return on their investment by itself does not, as a matter of law, amount to an unconstitutional taking." *Park Ave. Tower Assocs. v. City of New York,* 746 F.2d 135, 138 (2d Cir. 1984).

*Second*, the RPAPL amendments do not interfere with investment-backed expectations. Plaintiffs participate in a heavily regulated market and should expect alterations to the regulatory scheme. *See Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 403 (2d Cir. 1992) (noting that landlords are "involved in a heavily-regulated industry—rental of residential property in New York City—and cannot claim surprise that [their] relationships with certain tenants are affected by governmental action"); *accord Regina Metro. Co. v. N.Y.S. Div. of Hous. & Cmty. Renewal*, No. 1, 2020 WL 1557900, at *9 (N.Y. Apr. 2, 2020). Furthermore, investment expectations differ among property owners. It is implausible that the application of the RPAPL amendments interferes with every property owner's investment-backed expectations.

*Third*, the character of the RPAPL amendments is not akin to that of a taking. Notably, statutory relief in the form of post-judgment stays of eviction has existed for nearly a century. *See* L. 1962, ch. 312, § 21 (adding RPAPL § 753); *E. & A. Realty Corp. v. Coulter*, 8 N.Y.S.2d 811, 815 (Mun. Ct. 1938) (holding that Civil Practice Act § 1436 permitted court "to grant more than the usual five-day stay"). Plaintiffs' argument that the RPAPL amendments curtail their "right to exclude," *74 Pinehurst* Supp. Br. at 5, falls along with their physical taking arguments discussed

above. And their stubborn reliance on Justice Scalia's dissent in *Pennell* fails because his premise was rejected by a unanimous Supreme Court in *Lingle*, 544 U.S. at 543 ("[T]he Takings Clause presupposes that the government has acted in pursuit of a valid public purpose.").

In any event, the RPAPL amendments properly "adjust[] the benefits and burdens of economic life to promote the common good," *Penn. Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978), including the common good of "reducing the costs of [tenant] dislocation," *Pennell*, 485 U.S. at 14 n.8 (concluding that consideration of tenant hardship in setting regulated rents furthers legitimate government interests). Because the RPAPL is rationally related to this conceivable government interest, among others, it also does not violate due process. Plaintiffs' contention that the RPAPL amendments are not rationally related to "the RSL's stated objectives," *CHIP* Supp. Br. at 13, conflates two separate and distinct statutory regimes. The RPAPL applies to all tenancies, not just rent-stabilized units. Further, "[t]here is no requirement that a law serve more than one legitimate purpose," *Preseault v. I.C.C.*, 494 U.S. 1, 18 (1990).

## III.    The Relevant Parcel Is Each Entire Building

The *74 Pinehurst* Plaintiffs' argument "that the correct denominator is each rent-stabilized apartment (or those units in the aggregate), not the full building (including any non-RSL units)" gets it backward. *74 Pinehurst* Supp. Br. at 6. "'Taking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 326–27 (2002) (cleaned up) (quoting *Penn. Cent.*, 438 U.S. at 130). The Supreme Court has thus measured restrictions on the development of air, subjacent, and lateral rights against the total value of the entire site, *Penn Cent.*, 438 U.S. at 130–31, and it has measured temporary moratoria on development against the value of the entire duration of the estate, *Tahoe-Sierra*, 535 U.S. at 331.

Following this logic, the Second Circuit has looked to the value of an unregulated portion of a building to deny a regulatory-taking challenge. *Greystone Hotel Co. v. City of New York*, 1999 U.S. App. LEXIS 14960, at *4 (2d Cir. 1999) ("Greystone acknowledges ... that it is making an ordinary profit on the other, commercial portions of the building."). And a recent decision in the Southern District squarely held that the correct denominator is a full building. *Elmsford*, 2020 WL 3498456, at *10 ("Plaintiffs provide no basis for treating the subset of their rented apartments occupied by tenants facing financial hardship as a separate parcel; nor do they claim that [the Order] makes it 'commercially impracticable' for them to operate their buildings as a whole—let alone every building impacted by the Order, as they must to prevail on a facial challenge.").

These opinions involve analogous facts, comport with the applicable standard, and should be followed here. To identify the relevant parcel, courts must consider "the treatment of the land under state and local law; the physical characteristics of the land; and the prospective value of the regulated land." *Murr v. Wisconsin*, 137 S. Ct. 1933, 1945 (2017). "The endeavor should determine whether reasonable expectations about property ownership would lead a landowner to anticipate that his holdings would be treated as one parcel, or, instead, as separate tracts." *Id.* Application of the factors here establishes that the relevant parcel is each entire building.

*First*, New York law treats plots and buildings as single parcels. Most prominently, as the *74 Pinehurst* Plaintiffs concede, "the RSL applies to *buildings* with six or more units that were constructed prior to 1974." *74 Pinehurst* Compl. ¶ 36, ECF No. 1 (emphasis added). Plaintiffs are therefore wrong that "[t]he RSL applies on an apartment-by-apartment basis." *74 Pinehurst* Supp. Br. at 8. The only reason that some buildings to which the RSL applies have unregulated units is that Plaintiffs took advantage of *exceptions* to the RSL's application. In any event, the Supreme Court has long "declined to limit the parcel in an artificial manner to the portion of

property targeted by the challenged regulation." *Murr*, 137 S. Ct. at 1944; *see also Tahoe-Sierra*, 535 U.S. at 331 ("[D]efining the property interest taken in terms of the very regulation being challenged is circular."). Moreover, in New York City, each plot and building are assessed together for tax purposes.[9] Zoning laws generally apply to buildings and lots, not individual units. *See, e.g.*, Zoning Resolution § 22-00 (regulating "the uses of buildings or other structures" (italics removed)). The City's Housing Maintenance Code distinguishes between a "private dwelling," which houses no more than two families, and a "multiple dwelling," which houses three or more. N.Y.C. Admin. Code § 27-2004(a)(6)–(7).

Plaintiffs' reliance on the tax status of condominium units does not help them. *See 74 Pinehurst* Supp. Br. at 9. At least one other district court has squarely held that "the relevant parcel [was an] entire 22–unit condominium building, not only the individual units within that building that were affected by the challenged regulations," despite the fact that local law treated each condominium unit as a separate parcel "for all purposes." *2910 Georgia Ave. LLC v. D.C.*, 234 F. Supp. 3d 281, 295 (D.D.C. 2017). Plaintiffs do not cite any authority to the contrary, and in any event, none of Plaintiffs' buildings contain any condominiums. *See 74 Pinehurst* Compl. ¶¶ 12, 14–17. And even if a different denominator might apply to buildings containing condominium units, it would only further highlight the Second Circuit's observation that "a widely applicable rent control regulation such as the RSL is not susceptible to facial constitutional analysis under the Takings Clause." *W. 95 Hous.*, 31 F. App'x at 21.

---

[9] *See* N.Y. Real Prop. Tax Law § 102(12) (defining "real property" as including land itself and buildings erected upon, under, or above it); *id.* § 1802(1) (classifying residential real property for four or more families as Class 2); *Definitions of Property Assessment Terms*, N.Y.C. Dep't of Finance (subclassifying Tax Class of rental buildings with 4 to 6 units as Sub-Class 2a; rental buildings with 7 to 10 units as Sub-Class 2b; cooperative or condominium buildings with 2 to 10 units as Sub-Class 2c; and rental, cooperative, or condominium buildings with 11 units or more as Class 2), https://on.nyc.gov/2AU0t3o (last visited July 17, 2020).

*Second*, the physical characteristics of the land favor treatment of each plot and building as a parcel. Such characteristics "include the physical relationship of any distinguishable tracts, the parcel's topography, and the surrounding human and ecological environment. In particular, it may be relevant that the property is located in an area that is subject to, or likely to become subject to, … regulation," such that owners "could have anticipated public regulation might affect their enjoyment of their property." *Murr*, 137 S. Ct. at 1945–46, 1948. Each Plaintiff here owns "a single building on a single plot of land," and all units within each building are "contiguous." *2910 Georgia Ave.*, 234 F. Supp. 3d at 295–96. Plaintiffs state that their buildings' units "are separated by individualized locks, walls, and doors," *74 Pinehurst* Supp. Br. at 9, but this does not warrant a finding that each apartment is a relevant parcel. The *2910 Georgia Ave.* court squarely rejected a nearly identical argument that units were separated with "walls and doors." 234 F. Supp. 3d at 296. Moreover, New York City apartment buildings and land are highly regulated, and Plaintiffs should have expected that regulations would impact their enjoyment of their entire properties. *See Kraebel*, 959 F.2d at 403 (describing City's rental industry as "heavily-regulated"); *accord Regina Metro.*, 2020 WL 1557900, at *13. This is especially true because "the RSL applies to *buildings* with six or more units that were constructed prior to 1974," meaning Plaintiffs had to expect that the RSL would impact the entire building. *74 Pinehurst* Compl. ¶ 36 (emphasis added).

*Third*, Plaintiffs concede that "owners make building-wide investments in infrastructure and repairs." *74 Pinehurst* Supp. Br. at 9–10. Landlords purchase and sell entire buildings, pay taxes and a mortgage on the whole building, and operate their business at the building level. *See 74 Pinehurst* Compl. ¶¶ 12, 14–17, 107, 138–42, 152, 232. This just further underscores the "special relationship" between every unit in a building and confirms that the building is the proper denominator. *Murr*, 137 S. Ct. at 1949. Plaintiffs argue that the "availability of specific units" for

owners to live in "plays an integral role in the actual and planned *use* of [a] building." *74 Pinehurst* Supp. Br. at 10 (emphasis added). The planned *use*, however, is simply irrelevant to the "the prospective *value* of the regulated land," *Murr*, 137 S. Ct. at 1945. (emphasis added), which has a market value independent an owner's current use[10]

Plaintiffs do not need discovery, *74 Pinehurst* Supp. Br. at 10, because they have no support for their untenable, "circular" position that the relevant parcel is only the portion of each building subject to "the very regulation being challenged." *Tahoe-Sierra*, 535 U.S. at 331. Their utter failure to cite a single case finding that individual apartments are the relevant parcel warrants rejection of their argument. So too does the facial implausibility that owners of *buildings* subject to the RSL—which applies to *buildings* with six or more units that were constructed prior to 1974— would not reasonably expect their buildings to be treated as "one parcel" by the government. *Murr*, 137 S. Ct. at 1945.

---

[10] Plaintiffs attempt to dodge the fatal flaws in their denominator argument by citing inapposite cases about whether multiple massive tracts of land should be deemed a single parcel. *See Am. Sav. & Loan Ass'n v. Marin County*, 653 F.2d 364, 367, 368–69 (9th Cir. 1981) (considering whether 20-acre spit and 48-acre point constituted "single parcel" for taking purposes); *Loveladies Harbor, Inc. v. United States*, 28 F.3d 1171, 1180–81 (Fed. Cir. 1994) (finding relevant parcel to be 12.5 acres, rejecting government's request to consider 199 acres that were sold prior to denial of permit and 38.5 acres that were dedicated for public use, as well as landowner's request to consider only 11.5 acres subject to permit request); *Lost Tree Vill. Corp. v. United States*, 707 F.3d 1286, 1294 (Fed. Cir. 2013) ("The Court of Federal Claims erred by aggregating [the 4.99 acre] Plat 57, Plat 55, and the scattered wetlands as the relevant parcel…. [T]he relevant parcel is Plat 57 alone."); *Bridge Aina Le'a, LLC v. Hawaii Land Use Comm'n*, No. 11 Civ. 414, 2018 WL 3149489, at *18 (D. Haw. June 27, 2018 (holding that "the appropriate denominator [was] the 1,060 acres classified as urban, not also the 2,000 or so acres that was classified as agricultural"), *rev'd*, 950 F.3d 610 (9th Cir. 2020) (no reasonable jury could have found a taking); *Sartori v. United States*, 67 Fed. Cl. 263, 265, 272–73 (2005) (considering three legally and physically distinct sections of 8,300-acre farm). Not one is even remotely similar to the situation here.

IV.     **Plaintiffs' Due Process Claim Fails Because the RSL Is Rationally Related to the Conceivable Government Interest of Protecting Neighborhood Stability, Among Others**

Plaintiffs do no contest that the City and State have a legitimate interest in "local neighborhood preservation, continuity, and stability." *Nordlinger v. Hahn*, 505 U.S. 1, 12 (1992). Nor do they contest that the RSL furthers this interest.[11] Instead, the *74 Pinehurst* Plaintiffs simply wave their hands, saying that "the Court need not reach the question whether the RSL furthers the state interest described in *Nordlinger*" because, in their view, the only question that matters is whether the RSL is rationally related to addressing the City's housing emergency. *74 Pinehurst* Supp. Br. at 14. They are incorrect.

As the Supreme Court has made clear, and as CHIP's counsel correctly conceded at oral argument, *CHIP* Tr. 65:1–4, "[t]here is no requirement that a law serve more than one legitimate purpose," *Preseault*, 494 U.S. at 18 (concluding that it is irrelevant if one of the governmental purposes was "a sham" because the law at issue was rationally related to another governmental purpose).[12] So contrary to the *74 Pinehurst* Plaintiffs' completely unsupported assertion, the Court

---

[11] Nor could they. Plaintiffs conceded repeatedly in their briefing and complaints that the RSL keeps vacancy rates low because tenants stay in their homes. *CHIP* Compl. ¶ 142 (stating that "rent regulation decreases residential mobility"); *74 Pinehurst* Compl. ¶ 46 (stating that the RSL "provid[es] a financial incentive for tenants to remain in a rent-stabilized apartment").

[12] The *74 Pinehurst* Plaintiffs point to dicta from an Eighth Circuit decision—which held there was no due process violation—describing a prior Eight Circuit concurring opinion to argue that a law can fail rational basis review even if the law "further[s] some government interest." *74 Pinehurst* Supp. Br. at 15 n.16 (citing *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104 (8th Cir. 1992)). But that is not the law. *See Preseault*, 494 U.S. at 18. Nor does the Eighth Circuit dicta have any relevance here. Of course a zoning law that applies "only to persons whose names begin with a letter in the first half of the alphabet" would fail rational basis even if it furthers a governmental interest. *Chesterfield*, 963 F.2d at 1104. That is because the *classification*—persons whose names begin with a letter in the first half of the alphabet—would be arbitrary and capricious and fail rational basis review under the *Equal Protection Clause* regardless of whether the law satisfied the Due Process Clause. *Engquist v. Ore. Dep't of Agr.*,

should decide whether the RSL is rationally related to local neighborhood preservation, continuity, and stability—which it plainly is—because if the RSL is rationally related to any legitimate purpose, Plaintiffs due process claims must be dismissed.  This ends the inquiry.

But even if the question were only whether the RSL is rationally related to addressing the City's housing emergency, Plaintiffs' due process claims would still fail.  As the Second Circuit has unequivocally explained, courts must not "strike down a law as irrational simply because it may not succeed in bringing about the result it seeks to accomplish," nor can they strike down a law "because the problem could have been better addressed in some other way." *Beatie v. City of New York*, 123 F.3d 707, 712 (2d Cir. 1997).  Yet that is all Plaintiffs do, arguing that the RSL does not adequately address the City's housing emergency and that eliminating the RSL would better address the City's housing emergency than implementing the RSL.  "[A] legislative choice is not subject to courtroom fact-finding," and "[o]nly by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (citation omitted).  Plaintiffs' attempt to substitute democratic legislation for their own, self-interested policy choices must be rejected.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Intervenor Defendants' briefing and at oral argument, Intervenor Defendants' Motion to Dismiss should be granted.

---

553 U.S. 591, 602 (2008) (noting that "the Equal Protection Clause is concerned with arbitrary government classification").

Respectfully submitted,

Dated: New York, NY      SELENDY & GAY PLLC
      July 17, 2020

By:  */s/ Sean Baldwin*
     Sean Baldwin
     Caitlin Halligan
     Michael Duke
     SELENDY & GAY PLLC
     1290 Avenue of the Americas
     New York, NY 10104
     (212) 390-9000
     sbaldwin@selendygay.com
     challigan@selendygay.com
     mduke@selendygay.com

     Edward Josephson
     Pavita Krishnaswamy
     Directors of Litigation
     Legal Services NYC
     105 Court Street, 4th floor
     Brooklyn, NY 11201
     (718) 237-5538
     ejosephson@lsnyc.org
     pkrishnaswamy@lsnyc.org

     Judith Goldiner
     Attorney in Charge
     Civil Law Reform Unit
     Ellen Davidson, of counsel
     The Legal Aid Society
     199 Water St., 3rd Floor
     New York, N.Y. 10038
     (212) 577-3332
     JGoldiner@legal-aid.org

     *Attorneys for Intervenor Defendants N.Y. Tenants*
     *& Neighbors, Community Voices Heard, and*
     *Coalition for the Homeless*